DIXON *v.* THE PEOPLE.

---

### George Dixon v. the People.

*Witness : Proof of marriage of defendant in criminal case.* In a criminal prosecution the reputed wife of the defendant was called as a witness for the people, under objection, whereupon she testified, in substance, that she was married to the defendant in 1865, and lived with him as his wife: that she was previously married to one Phillips in 1859; that the last time she saw him was in 1860; that she had not heard from him since, but that she had seen a notice in 1862

in the newspaper of the death of a person whom she supposed to be him, and that she informed said Dixon previous to her marriage to him of her relation to said Phillips, and of said death. The prosecution then offered slight evidence, tending to show that a person resembling said Phillips had been seen alive since the marriage to Dixon.

*Held,* That this evidence made a *prima facie* case of a valid marriage in good faith; since the presumption of innocence, that she would not willingly commit the crime of bigamy, by marrying Dixon while Phillips was alive, rendered it obligatory upon the Court, in the absence of testimony to the contrary, conclusively to presume the death of Phillips and the validity of the marriage with Dixon.

*Held further,* that after the prosecution had shown an actual marriage between the defendant and the witness, *prima facie* valid and in good faith, upon which the defendant might reasonably rely as valid, and upon which, on the trial, he did rely and claim as valid, it was not competent for the prosecution to introduce opposing testimony for the purpose of establishing in this collateral manner the invalidity of the marriage, so as to make the alleged wife a competent witness against the defendant. The marriage was not in issue, and the pleadings gave defendant no notice that such a question was to be tried, and he cannot be called upon thus suddenly and unexpectedly to meet the question.

*Heard January 7th. Decided April 13th.*

Error to Branch Circuit.

The plaintiff in error was tried and convicted in the court below for the murder of his son James Dixon.

On the trial, the prosecution offered as a witness one Henry S. Dean, who testified that he was a Justice of the Peace; that he knew Harriet Dixon—claimed to be the wife of defendant; that he married her in 1857 or 1858 to a man by the name of Phelps or Phillips; that he was a tall slim man with sharp features and black hair.

The prosecution then introduced Harriet Dixon as a witness; and asked her whether she was ever married by said Dean to any other person.

This was objected to, on the ground that she was the wife of defendant. The Court overruled the objection. Her testimony and the subsequent proceedings are stated at length in the opinion.

*Shipman & Loveridge,* for plaintiff in error.

1. Harriet Dixon was not a competent witness against her husband for any purpose whatever—not even to prove her former marriage.—*Laws of 1861, p. 169, sec. 4.*

It was error in the court below to permit her to be examined as a general witness against him.

*a.* The rule of the Common Law excluding husband and wife from being witnesses for or against each other, is analogous to the rule between client and attorney. (*1 Greenl. Ev.* § *338.*) Yet, as to them, the actual relation need not exist. If the client acts under the belief that it exists, it is sufficient to exclude the communication.— *Smith v. Fell, 2 Curteis, 6, 67; Sargent v. Hampden, 38 Me. 581; McClellan v. Longfellow, 32 Id. 494.*

Why require the actual relation to exist between husband and wife?

*b.* On grounds of public policy, an acknowledged marriage, believed to be lawful by the parties, ought not to be disputed collaterally, nor in a proceeding where it is not put directly in issue — that an opportunity to produce all the evidence of the fact, may be had.— See *Campbell v. Twemlow, 1 Price, 81, 88, 89, 90; 1 Greenl. Ev.* § *339.*

At all events, Mrs. Dixon was incompetent so long as the legality of her last marriage was in controversy.— *1 Greenl. Ev.* § *339; Griggs' Case, T. Raym. 1; Scherpf v. Szadecky, 4 E. D. Smith, 110; Bull, N. P. 287.*

2. It was not proven that her former husband was living at the time of her last marriage.

The Phillips described by the witness Bailey, is as much like her former husband as any other "tall, slim man, with dark eyes," but no more so.— (*As to similarity of names, see Wickersham v. People, 1 Scam. 128; Hubback on Succession, 103, 465–5.*)

3. But it does appear that her former husband was dead at the time of her last marriage.

*First:* By presumption: Her last marriage was March 9, 1865, and it will not be presumed that the man she married December 30, 1859, and had neither seen nor heard of, since April, 1860, was then living.— *1 Greenl. Ev.* § *35; Mathews Presump. 29; Williams v. East Ind. Co. 3 East;*

*192; Rex v. Twing, 2 B. & Al. 386; Monroe v. Gardner, 1 Const. R. 328.*

*Second:* By the newspaper report of his death. Hearsay is admissable to prove death.—*Jackson v. Boneham, 15 Johns. 226; Jackson v. Etz, 5 Cow. 314; Doe v. Griffin, 15 East, 293; Scott v. Ratcliff, 5 Peters, 81; Pegram v. Isabell, 2 H. & M. 193; Jackson v. King, 5 Cow. 237; Lewis v. Marshall, 5 Peters, 470; 2 Greenl. Ev. § 478, a — 478 b; Cochrane v. Libby, 18 Maine, 39.*

It is as much in the "ordinary course of business" for newspapers to publish deaths as market reports, yet these are admissable.— *Sisson v. C. & T. R. R. Co. 14 Mich. 489; C. & T. R. R. Co. v. Perkins, 17 Id.; Jewell v. Jewell, 1 How. 219.*

It seems slight proof in this case would be sufficient. — *2 Greenl. Ev. § 278, h.*

*Dwight May,* Atty. General, for the People.

1. At the trial, the people offered one Harriet Dixon as a witness, and certain preliminary questions were asked her, evidently for the purpose of showing that she was not the lawful wife of the respondent.

This was objected to, for the reason that she was his wife, and could not testify in the case without his consent — *Laws 1861, § 4.*

( *a* ). The objection begs the question, and assumes that to be *a fact* which was then in dispute.

( *b* ). This, however, is of little consequence, because it subsequently turns out in proof, that the witness had, at the time of the pretended marriage with the respondent, a lawful husband ( Phillips ) then living. — *2 Comp. Laws, § 3,208.*

The proof clearly shows this, and the court properly ruled that the witness was not the lawful wife of the respondent.

( *c.* ) If it was not for the court to decide *the fact*, it ruled that the witness was not the lawful wife of the respondent, and did right in submitting the question to the jury, under proper instructions.

CHRISTIANCY J.

Was Harriet Dixon — claimed by the defendant below to be his wife — properly admitted as a witness against him?

This is the main question in the case; and the defendant having objected to her introduction, on the ground that she was his wife, the question is to be decided on common law principles, the statute not affecting the case.

It appeared from the preliminary examination of the woman ( which must be treated as an examination upon the *voir dire, 1 Greenl. Ev. 424* ), that she had been married to one John or Jonathan Phillips, Dec. 30, 1859, at Green Oak, Livingston County, in this State; that he was a tall, slim man, with black hair, black eyes, and a moustache; that the last time she saw Phillips was the last of April, 1860; that she had not heard from him since; that she was married to this defendant at Coldwater, Branch County, in this State, March 9, 1865, by a Methodist minister; that in 1862 she read an account in a newspaper of the death of a man by the name of Phillips, whom she supposed to be her husband; that when she married the defendant she told him her husband ( Phillips ) was dead, and had been dead several years; and she had lived with the defendant as his wife about three years in Branch County, up to the time of his arrest in this case.

This evidence made a very clear and strong *prima facie* case of a valid marriage in good faith with the defendant; since, without reference to the newspaper report, the presumption of innocence—that she would not commit the crime of bigamy by marrying the defendant while Phillips was alive — rendered it obligatory upon the court, in the absence of testimony to the contrary, conclusively to per-

sume the death of Phillips and the validity of the marriage with the defendant. — *Rex v. Twyning, 2 B. & Al. 386; Williams v. East India Co. 3 East, 192; 1 Greenl. Ev. §§ 34, 35; Mathews Pres. Ev. 29.*

The only evidence offered to overcome this presumption was that of Dean, the justice who had married her to Phillips, and that of Bailey; Dean did not know whether the name was Phelps or Phillips; he had seen him but once; he was a tall, slim man, with sharp features and black hair. The substance of Bailey's testimony was, that some ten or twelve years before, he had known a man in Wayne County, Michigan, by the name of John or Jonathan Phillips; that his (P.'s) father and folks lived there, and he with them, and had no other home; that he travelled much, but he did not know of his living in any other county; that he was always called John; that witness knew him for some ten years up to the time witness removed from Wayne County, some six years before this trial (which must have been about 1862). He knew nothing of any marriage of this Phillips with this woman, and had never seen her with him; but this Phillips was a tall, slim man, with dark eyes, and a long nose, and that he (this Phillips) was alive and in Branch County about four years before this trial (or in 1864), and worked for witness some six weeks, and that he saw him again in the same county about two years before the trial (or in 1866).

This is all the evidence which could be claimed to have any possible tendency to show the identity of this Phillips with the former husband of this woman. And upon the hypothesis that it was competent to try the question of the validity of the defendant's marriage in this collateral manner under the particular circumstances of this case, did this evidence fairly tend to prove the identity of the former husband of this woman with the Phillips who was shown to have been alive in Branch County in 1864 and 1866, after the defendant's marriage? Dean married this woman

to a man by the name of Phillips in 1859 at Green Oak, in Livingston county, but he had not seen him since. Bailey had formerly known a man by the name of John Phillips, in Wayne county, and had seen him in Branch county, alive, in 1864 and 1866; but whether this was the same Phillips to whom Dean referred, or who had been married to this woman he is entirely ignorant; he knows nothing of any such marriage or of their having lived together, or whether they had ever been recognized as husband and wife.

Neither Dean nor Bailey gives any specific or clearly distinctive mark by which either can know that the other refers to the same person to which he himself refers. Nor does either refer to any particular circumstance or transaction with which the Phillips he had known had been connected, which is known to or recognized by the other, so as to enable them to know that both are referring to the same person. There was, it is true, an identity of names (though Dean himself did not know whether the name was Phelps or Phillips, but the woman renders it certain that it was Phillips), and there is, so far as can be judged of by verbal description, a general resemblance in personal appearance. But Phillips is so common a name, that of itself it seems little better for identification than that of Smith or Jones. And the description of the personal appearance is so general, without any distinctive or specific mark or peculiarity, that it would probably fit equally well, at least one in every twenty or twenty-five men in the State.

Such merely verbal descriptions of such general features or resemblances, are in themselves of no weight, though they possibly might have some bearing as corroborative or impeaching evidence in case of a conflict between witnesses testifying to or against the identity, upon professed personal knowledge.

Without some very peculiar and distinguishing mark or feature, language is incapable of conveying to the mind of another so accurate a picture of a person the latter has not

seen, as to enable him with reasonable certainty to recognize the original. And among the most intelligent men, two might entirely agree in a much more specific description than is here given of a third person; and yet upon attempting to verify the description by the original it might be found that the two are referring to different persons, who, when actually seen, will be found to bear but a slight resemblance, and not likely to be mistaken, the one for the other, by any one who has seen both.

There is also in the testimony in this case, some evidence having a slight tendency at least to disprove the identity. The testimony of Bailey tended to show that the Phillips to whom he referred, resided in Wayne county at the time of his marriage; while that of the wife tended to show that he did not reside in Wayne, but in Livingston. And when we consider that the identity, if it existed, must, from the nature of the case, have been easily shown by persons living in Wayne or Livingston county, or both; that no attempt is shown to have been made in this way, nor any reason shown why it was not done or attempted, instead of relying upon this inferior and more dubious kind of evidence; we think it was clearly the duty of the court to have excluded the evidence in question, as having no safe or legitimate tendency to establish the identity in question.

Upon this evidence however, the court seems to have assumed to determine that the marriage with the defendant was void, as he admitted the woman to testify against the defendant, notwithstanding his objection.

This might dispose of the case; but as there is to be a new trial, and the evidence of this woman may be again offered, we think it proper further to say, that after the prosecution had shown, as they did by this woman, upon the *voir dire* ( for such, we think, was the effect of her preliminary examination ), an actual marriage, between the defendant and the witness, *prima facie* valid and in good faith, upon which the defendant might reasonably and

honestly rely, as valid, and which upon the trial he did rely upon and claim as valid; it was not, in our opinion, competent for the prosecution to introduce opposing testimony for the purpose of establishing, in this collateral manner, the invalidity of the marriage, so as to make the alleged wife a competent witness against the defendant.

The rule which excludes husband and wife from testifying against each other rests upon sound reasons of public policy, much broader than that of the mere interest of a witness. The object of the rule is to avoid occasion for domestic dissension and discord, to preserve inviolate that mutual confidence which is essential to the marriage relation, the peace of society, and the social welfare.

This confidence, therefore, should not be violated, nor the privilege it gives taken away without a fair trial of the validity of the marriage (when a marriage in fact *prima facie* valid and in good faith has been shown, as it is here).

Such a trial cannot be had when the marriage is not in issue, and the pleadings give the defendant no notice that such a question is to be tried, and he is suddenly and unexpectedly called upon to meet the question without a fair opportunity to produce his evidence.

It is easy to see how a defendant might be wrongfully deprived of his privilege and the confidence of the marriage relation be rudely violated by such a mode of trying the validity of his marriage. While he has no reason to anticipate such a question, the prosecution may arrange their plans and prepare their testimony before hand, and suddenly introduce upon the trial evidence, showing, for instance, that the defendant or his supposed wife has been previously married to another person who is still alive; while the truth may be that the former marriage was void by reason of the woman having a former husband living at the time of such marriage, or for some other cause, or a divorce may have been obtained by the woman, or by the defendant, perhaps in another state; but the defendant thus

unexpectedly called upon, cannot produce his witnesses nor obtain the record of the divorce in time to avail him on the trial.

There is much difficulty in questions of this kind. It is not safe to lay down any universal rule. Every case must depend, in a great measure, upon its own peculiar facts and circumstances; and our decision must be understood with special reference to the facts of this case.

The judgment of the Circuit Court must be reversed and a new trial awarded.

COOLEY CH. J. and CAMPBELL J. concurred.

GRAVES J.

The evidence submitted on the question of the competency of the female witness in this case, established a marriage in fact between her and the defendant, contracted and adhered to in good faith, while there was not a scintilla of evidence tending to show that the defendant, or, indeed, the witness, had any suspicion from the time of the marriage until the arrest that the legality of the union was at all questionable. Since, therefore, the only difference between the relation of these parties and that which obtains in other cases where marriage is a peremptory disqualification consisted in the possible invalidity as matter of law of the marriage which the parties all along believed to be valid, I think that the reason of the rule which precludes their testifying for or against each other fairly applicable; and on this ground I assent to a reversal of the judgment.