NEW YORK COUNTY.—HON. D. G. ROLLINS, SURRO-
GATE.—March, 1885.

NESBIT *v.* NESBIT.

*In the matter of the estate of* JOHN NESBIT, *deceased.*

The presumption of the continuance of life shown to have once existed
must yield, in case of conflict, to that of innocence of crime.

Upon an application, made in 1885, for a decree granting to petitioner, as
decedent's widow, letters of administration on his estate, it appeared
that petitioner had been married in 1874 to one D., with whom she
afterwards lived as his wife, and whom she last saw in 1875. There
was no evidence that D. had been seen by any one since 1878. In
1883, petitioner was married to decedent, who was cognizant of her
prior marriage to and relations with D.—

*Held,* that there was better warrant in the law and in the evidence, for
holding that D. was dead than for holding that decedent and petitioner
were guilty of a bigamous marriage; and that the prayer of the peti-
tion should be granted.

Rex v. Twyning, 2 *Barn. & Ald.*, 386—followed.

The provision contained in 2 R. S., 139, § 6, relating to the avoidance of a
second marriage contracted by a person whose former husband or wife
has been absent for five years, without being known to such person to
be alive during that time, has application only in a case where the
absentee has been discovered to be still alive.

APPLICATION by Catherine Nesbit, for the grant to
her, as the widow of decedent, of letters of adminis-
tration upon the estate of the latter; opposed by
Franklin P. Nesbit and others, decedent's sons.

SULLIVAN & CROMWELL, *for petitioner.*

MAN & PARSONS, *for objectors.*

THE SURROGATE.—This petitioner claims to be the
widow of John Nesbit, deceased, and to be entitled,

as such, to administer upon his estate. Her claim to letters is disputed by Mr. Nesbit's three sons, his children by a deceased wife, who died in 1879.

On January 4th, 1883, I find, by the evidence, that there was celebrated a ceremonial marriage between John Nesbit and this petitioner. I also find that the two thereafter cohabited as husband and wife, until Mr. Nesbit's death. It is insisted, on behalf of the next of kin, that, at the time when such marriage was solemnized, the petitioner was the lawful wife of one Oscar Decker, and was, for that cause, incapacitated from becoming the wife of John Nesbit. That she was married to Decker in the year 1874, and that thereafter the two lived together, at first in England and afterwards in this city, is not disputed.

According to the testimony of the petitioner herself, she last saw Decker at the city of Indianapolis, in the state of Indiana, in the year 1875. There is no evidence that she has ever seen him since. He was then under arrest upon a criminal charge. Of this charge he was subsequently tried and convicted. In December, 1875, he was sentenced to imprisonment in the state prison at Michigan city, where he remained in confinement until September, 1878. On or before the 3rd of October of that year, he returned to this city, and on that day, under the name of George Mason, he was arrested by policeman Erwin for the crime of burglary. After giving bail for his appearance to answer that charge, he seems to have speedily taken his departure from New York, and to have henceforth avoided making it another visit. There is no legal and satisfactory evidence that, at

any time or in any place, he has since been seen by any human being.

The testimony in this proceeding was taken out of court, and subject to such objections as might thereafter be insisted upon. by the respective parties, when the cause should be submitted to the Surrogate. I must strike out, on motion of petitioner's counsel, those portions of the testimony of Henry G. Julian to which objections have been noted on petitioner's behalf, as shown by the stenographer's minutes. The evidence then remaining does not satisfy me that, since the autumn of 1878, Decker has ever given actual demonstration that he was still alive. In this state of the evidence, what is to be presumed, as to his existence or non-existence on January 4th, 1883, when the petitioner was married to John Nesbit ? Is it to be presumed, in favor of the next of kin, that, because he was alive in October, 1878, he continued to live in January, 1883 ; or, on the other hand, is the petitioner entitled to the benefit of a contrary presumption, and is the burden of proof upon the next of kin, to show that her marriage with decedent was unlawful, and that in contracting it she was guilty of bigamy ? Which presumption must yield to the other, that of the continuance of Oscar Decker's life, or that of this petitioner's innocence of crime ?

This is an interesting question, but not a novel one. It does not appear to have been distinctly answered by the courts of New York, but it has been answered by the courts of several of our sister states in many reported decisions.

The doctrine that ordinarily prevails, as to the presumption of continuance of life, is well stated by Surrogate BRADFORD : " Whenever the law is invoked as to rights depending upon the life or death of an absent party, he is to be deemed to be living until seven years have expired, and after that he is to be deemed as dead ; not that the law finds, as a matter of fact, that he died on the last day of the seven years, but that rights depending upon his life or death are to be administered as if he died on that day " (Eagle v. Emmet, 4 *Bradf.*, 117).

This presumption in favor of seven years continuance of life has been repeatedly held, however, to be inferior in force to the presumption of innocence, where the two have come into conflict; and the doctrine is now firmly established, that one who enters into a second marriage, the validity of which is attacked upon the grounds urged by the respondents in the present contention, must be presumed legally competent to contract such marriage until positive proof has been furnished that his or her former wife or husband was living at the time of such second marriage (Dixon v. People, 18 *Mich.*, 84; Klein v. Laudman, 29 *Mo.*, 259; Sharp v. Johnson, 22 *Ark.*, 79; Greensborough v. Underhill, 12 *Vt.*, 604; Hull v. Rawls, 27 *Miss.*, 471; Cochrane v. Libby, 18 *Maine*, 39; Spears v. Burton, 31 *Miss.*, 547; Gibson v. State, 38 *id.*, 313; Yates v. Houston, 3 *Tex.*, 433; Lockhart v. White, 18 *id.*, 102; Canady v. George, 6 *Rich. Eq., S. C.*, 103; Loring v. Steineman, 1 *Metc.*, 204; Kelly v. Drew, 12 *Allen*, 107; Blanchard v. Lambert, 43 *Iowa*, 228; Matter of Edwards, 58 *id.*,

431; Senser v. Bower, 1 *Penrose & Watts* [*Pa.*], 450).

The doctrine of the cases just cited seems to be approved in Clayton v. Wardell (4 *N. Y.*, 230); and in O'Gara v. Eisenlohr (38 *N. Y.*, 296), it is recognized by MASON, J., pronouncing the opinion of the Court of Appeals, though he proceeds to show why the presumption of innocence should not, upon the facts of the case, be allowed to prevail.

Upon the foregoing authorities, I feel bound to hold (in the absence of evidence establishing that, at any time between the winter of 1878 and January, 1883, Oscar Decker was living) that, when John Nesbit died, this petitioner was his lawful wife. Even if I make a far less rigid application than the authorities above cited seem to require of the presumption of innocence, as conflicting with the presumption of life, I can come to no other conclusion than that which has just been declared.

Many of those authorities approvingly refer to the decision in Rex v. Inhabitants of Twyning (2 *Barn. & Ald.*, 386). The facts of that case, which was a controversy as to the settlement of a pauper, were these : A. intermarried with B. B. absented himself, and, for the space of a year, there were no tidings of him. A. then married C. It was insisted, by one of the parties to the action, that, in the absence of evidence to the contrary, it should be presumed that B. was living at the time of A.'s second marriage. But the court (BAILEY and BEST, JJ.) held otherwise. " The presumption of law," they said, " is that he (B.) was not alive, when the conse-

quence of his being so is that another person has committed a criminal act. We think, therefore, that the sessions were right in holding the second marriage to have been valid, unless proof had been given that the first husband was alive at that time."

This decision was rendered by the Court of King's Bench in 1819. Sixteen years later, the same court held that the validity of the second marriage of a man, whose first wife was shown to have been alive twenty-five days before such second marriage was solemnized, was not necessarily to be presumed, from the mere absence of proof that such first wife did not die in that brief interval (Rex v. Inhabitants of Harborne, 2 *Ad. & Ell.*, 540). Upon these two cases, Mr. BEST (Principles of the Law of Evidence, § 334) makes the following comment: " There is no conflict whatever between the decisions, . . . . . nor does the principle involved in either of them present any real difficulty. The presumption of innocence is a *presumptio juris* and, as such, is good until disproved. Rex v. Twyning decides that the presumption of the fact of the continuance of life, derived from the first husband's having been shown to be alive about a year previous to the second marriage, ought not to outweigh the former presumption in the estimation of the sessions or the jury ; while R. v. Harborne determines that, if the period be reduced from twelve months to twenty-five days, it would be otherwise, and that the sessions or a jury might, in their discretion, presume the first husband to be still living."

Manifestly, the doctrine of Rex v. Twyning was not intended to be diametrically reversed by Rex v.

Harborne ; in other words, it is not asserted, by the later decision, that, where the validity of a marriage is attacked upon the grounds urged by the next of kin in the case at bar, the presumption of life outweighs the presumption of innocence.   Upon the evidence as it stands in the case at bar, with the two presumptions *in equilibrio*, I do not feel warranted in finding that Decker was alive in January, 1883.

The circumstance, that the petitioner seems to have given some sort of encouragement to the institution of a proceeding for obtaining a divorce from her first husband, is relied upon by contestant, as indicative of her lack of good faith in contracting the second marriage.   That circumstance gives little help toward the solution of the question whether, at the time the second marriage was solemnized, Decker was alive or dead.   Even if she had fully sanctioned the bringing of an action for divorce, and such an action had been actually begun by her direction (and the evidence falls far short of establishing that state of facts), her conduct would not have involved of necessity a conviction or belief, on her part, that her first husband was still living ; much less would it have established the fact of his continued existence.   It would merely have indicated a lack of certainty that he was dead.

Upon all the evidence, I see no reason for doubting that the decedent was fully advised of the petitioner's first marriage, and of her subsequent relations with Decker, and that his knowledge or lack of knowledge as to Decker's being alive or dead was of a piece with her own.   If, therefore, Decker was living when Nesbit took this woman to wife, he became

amenable, no less than she herself, to the penalties of the criminal law. The presumption of innocence, by which she is shielded, extends also to this decedent. I am glad to find better warrant, in the law and the evidence, for holding that Decker is dead, than for holding that Nesbit was a guilty party to a bigamous marriage.

It is, of course, unnecessary, in view of the grounds upon which I have based the decision of this controversy, to consider a question which was the chief subject of discussion upon the argument, namely, the question whether the petitioner's second marriage should not be deemed valid because of Decker's absenting himself from her for five successive years, without being known by her to be living during that time.

Sec. 6, tit. 1, ch. 8, part 2, of the Revised Statutes (3 *Banks*, *7th ed.*, 2332) declares that, under such circumstances, " the second marriage shall be void only from the time that its nullity shall be pronounced by a court of competent authority."

But manifestly it is only when the person " absenting himself " has been discovered to be still living that occasion can arise for invoking the provisions of this statute.

Letters may issue to Catherine Nesbit. The cross-petition of the next of kin is denied.