Filed Nov. 2, 1889.

---

No. 13,846.

## CASTOR v. DAVIS ET AL.

MARRIAGE.—*Presumption of Validity.—Presumption of Continued Insanity.*— Where a man who has been adjudged of unsound mind afterwards marries a woman with whom he lives for more than thirty years in the relation of husband and wife, the presumption of continued insanity will not prevail as against the presumption in favor of the legality of the marriage.

From the Boone Circuit Court.

*M. E. Clodfelter* and *T. J. Cason,* for appellant.

*R. W. Harrison* and *B. S. Higgins,* for appellees.

COFFEY, J.—This was an action by the appellant against the appellees for the possession of the land described in the

complaint.   The cause being at issue was submitted to the court for trial without the intervention of a jury.   At the request of the appellant the court made a special finding of the facts in the cause, which finding is as follows :

" 1st.   That, on the 17th day of January, 1856, John Snavely was the owner in fee simple of the real estate herein, viz., the south half of the northeast quarter of section 30, in township 20 north, of range 2 west, situate in Boone county, Indiana, and that on said last named date said John Snavely, together with his wife Lucinda R. Snavely, by deed, conveyed said real estate to Esther Blackburn.

" 2d.   That said Esther Blackburn and John, her husband, conveyed by warranty deed said real estate, June 10th, 1857, to Nathan Elliott.

" 3d.   That, on the 11th day of June, 1857, the said Nathan Elliott and wife conveyed by warranty deed said real estate to John Blackburn and Esther Blackburn, husband and wife.

" 4th.   That, on the 4th day of September, 1873, said John and Esther Blackburn conveyed by deed said real estate to Joseph Piles and Elizabeth Piles, husband and wife, in consideration of $4,000, named in the deed.

" 5th.   That Joseph and Elizabeth Piles, on the 17th day of February, 1877, in consideration of $4,000, named in the deed, conveyed said real estate to Daniel Rhodes.

" 6th.   That, on the 24th day of May, 1878, said real estate was recovered by a decree rendered in the Montgomery Circuit Court, the action having been commenced in Boone county, Indiana, and the venue thereof changed to Montgomery county, against said Rhodes and wife, and the title to said real estate recovered and quieted in Joseph Piles and Elizabeth Piles, and the deed to Rhodes held for naught.

" 7th.   That during the time the same was in the hands of said Rhodes, Rhodes and wife mortgaged said real estate to the Travellers Insurance Company for $1,000, which mortgage was so executed on the 13th day of April, 1877.

" 8th. That, on the 19th day of October, 1881, said Joseph Piles and Elizabeth Piles conveyed by quitclaim deed said real estate to defendants Almond Davis and Mary E. Davis, his wife, in consideration of $400 cash, the grantees to assume and pay all encumbrances, including the mortgage aforesaid; and they did pay off said mortgage, amounting to $1,000, and $1,400 cash for the same.

" 9th. That said John Blackburn departed this life on the 15th day of September, 1873, without child, children, father or mother, and that said Esther Blackburn departed this life on the 3d day of May, 1876, without issue, child or children, father or mother.

" 10th. On the 14th day of August, 1840, an inquisition was had in the probate court of Montgomery county, Indiana, regarding the sanity of the said John Blackburn, and he was adjudged by said court a person of unsound mind, and incapable of managing his estate, and one Hudson Middleton was appointed his guardian, who was discharged by said court on the — day of August, 1846; that the defendants Almond and Mary E. Davis had no notice or knowledge whatever at the time they took title for said real estate of the unsoundness of mind of said Blackburn, or of the existence of the record of the unsoundness of his mind until disclosed in the trial of this cause.

" 11th. That said John Blackburn and Esther Conrad were married about November, 1843, in Montgomery county, Indiana, and lived and cohabited together as such husband and wife, and went into society, and were accepted as such until the death of John Blackburn, as above stated.

" 12th. That said John Blackburn and Esther Blackburn moved from Montgomery county to Boone county, Indiana, about 1849 or 1850, and continued to live together in Boone county nearly the whole of said time, residing on said land, and were so living on the same at the time they departed this life.

" 13th. That the plaintiff, Amy Castor, is a sister of said

John Blackburn, deceased, and the following children of a deceased sister are living, viz., Tolina Cox, Hannah Grist, and William Smith.

" 14th. That immediately preceding the commencement of this action the plaintiff demanded possession of the whole of said real estate, which was refused, and claimed by the defendants Almond Davis and Mary Davis.

Upon these facts the court stated, as conclusions of law, that the plaintiff had no right, title, or interest in the land described in the complaint, and was not entitled to the possession thereof, to which conclusions the appellant excepted, and assigns as error that the court erred in its conclusions of law upon the facts found.

The question upon which the case, in a measure, depends, is this: Was the marriage of John Blackburn void? If it were conceded that Esther Blackburn and John Blackburn were husband and wife, then the conveyance executed by Elliott to them vested in them an estate by entireties, and as she survived him it follows that the appellant can not recover in this action.

In the case of *Redden* v. *Baker*, 86 Ind. 191, it was held that where a person had once been adjudged insane by a proper tribunal, the presumption of insanity continued until such person had been declared sane under the proceeding provided for by our statute, and that while the record of insanity stood such person was incompetent to enter into any contract. Such is, undoubtedly, the rule where there are no counter presumptions, and where the question involved relates to ordinary business transactions in which the public has no interest.

But in cases like this, involving the legality of a marriage, every presumption is in favor of the legality of such marriage. The question, therefore, is, which is the stronger presumption,? that of continued insanity for the period of thirty-three years, and consequent adultery, or that of restoration to sanity and legitimate cohabitation?

Mr. Bishop, in his work on Marriage and Divorce, vol. 1, section 457, says: " Every intendment of the law is in favor of matrimony. When a marriage has been shown in evidence, whether regular or irregular, and whatever the form of the proofs the law raises a strong presumption of its legality; not only casting the burden of proof on the party objecting, but requiring him throughout, and in every particular, plainly to make the fact appear, against the constant pressure of this presumption that it is illegal and void. So that it can not be tried like ordinary questions of fact, which are independent of this sort of presumption."

Following the rule here enunciated, it was held in the cases, *Greensborough* v. *Underhill*, 12 Vt. 604, *Harris* v. *Harris*, 8 Bradwell (Ill.) 57, *Dixon* v. *People*, 18 Mich. 84, and *Yates* v. *Houston*, 3 Texas, 433, that where the parties had entered into a second marriage the law would presume in favor of the validity of the second marriage, in absence of proof to the contrary, that the former consort was dead at the time of such second marriage.

So in the case of *Klein* v. *Laudman*, 29 Mo. 259, and *Hull* v. *Rawls*, 27 Miss. 471, where the parties had entered into a second marriage, it was held that the law would presume in favor of the legality of the second marriage, that the first marriage had been dissolved by a divorce, in the absence of, some evidence to the contrary.

In the case of *Teter* v. *Teter*, 101 Ind. 129, where the parties intermarried at the time the husband had a living wife, who afterwards obtained a divorce from him, and the parties cohabited together after the granting of such divorce, it was held that the law would presume a good common-law marriage, the presumption being in favor of morality and not immorality, marriage and not concubinage, legitimacy and not bastardy. See, also, *Boulden* v. *McIntire*, 119 Ind. 574.

To sustain the claim of the appellant in this case, we are required to presume that John Blackburn and Esther Blackburn lived in adultery for the period of thirty years. In

Castor *v.* Davis *et al.*

view of the facts that they went into and were received and accepted in society as husband and wife during all that time, and engaged in the execution of deeds of conveyance, and were purchasing and selling real estate, we do not think we are authorized to indulge such a presumption. Whatever the presumption arising from the record made in 1840 may be when applied to ordinary contracts, we do not think it should be permitted to overcome the presumption in favor of the legality of a marriage where the parties lived together as husband and wife for more than a quarter of a century.

Marriage is something more than an ordinary contract affecting the property rights of the parties, it is an institution in which the public have an interest, and it may well be doubted as to whether the heirs of John Blackburn could be heard to question the legality of his marriage.

In the case of *Pence* v. *Aughe,* 101 Ind. 317, it was held that the guardian of an insane person could not maintain an action to annul a marriage with his ward. Such action can only be maintained by one of the parties to the marriage.

We do not think that the circuit court erred in its conclusions of law upon the facts found.

Judgment affirmed.

Filed Sept. 24, 1889; petition for a rehearing overruled Nov. 6, 1889.