# Franklin *v.* Lee.

[No. 3,809. Filed November 26, 1901. Rehearing denied June 27, 1902. Transfer denied November 19, 1902.]

APPEAL AND ERROR.—*Waiver of Error.*—An assignment of error not discussed on appeal is waived. *p. 34.*

SAME.—*New Trial.*—*Newly Discovered Evidence.*—*Nature of Evidence.*— To justify the granting of a new trial on the ground of newly discovered evidence, it must appear that such evidence is not cumulative; that it is not in the nature of impeachment or contradiction; that the appellant has shown reasonable diligence; and that with such evidence another trial would render reasonably certain a different result. *pp. 36, 37.*

SAME.—*New Trial.*—*Newly Discovered Evidence.*—*Sufficiency.*—In an application by defendant for a new trial on account of newly discovered evidence, the principal fact relied upon was the date of the birth of the plaintiff, the defendant stating in his affidavit

that the witness would testify that he was born in 1876. Plaintiff testified from a record of his birth which he saw in a Bible, that he was born in the year 1874, and his mother and sister both testified to the same date of birth. *Held,* that the proposed evidence was not sufficient to justify the granting of a new trial. *pp. 36–39.*

DESCENT AND DISTRIBUTION.—*Bastards.—Marriage of Parents in Another State.*—The right of a child born out of lawful wedlock to inherit from his father lands in this State is governed by the statutes of descent of this State, although the marriage of the parents was claimed to have been solemnized in another state. *39–41.*

MARRIAGE. —*In Violation of Statute.*—Statutes on the subject of marriage, even though penal, are merely directory; and a marriage, though not in accordance with the forms of the statute is valid, unless the statute specifically provides that failure to comply with its provisions renders the marriage void. *pp. 41–44.*

SAME.—*Presumption of Regularity.*—Where in an action by a son born out of wedlock to recover the estate of his father it was shown that the father and mother were married shortly after plaintiff's birth, and the father acknowledged plaintiff to be his son, the presumption of law arose that the marriage was regular, and the burden of proving the contrary was on the defendant. *pp. 41–44.*

APPEAL AND ERROR.—*Brief.—References to Record.*—An objection to the admission of evidence will not be considered on appeal, where the place in the record in which the evidence appears is not pointed out in the brief. *pp. 44–45*

From Vanderburgh Circuit Court; *J. H. Foster,* Judge.

Action by Louis Lee against Robert Franklin and others to recover possession of real estate and to quiet title. From a judgment for plaintiff, defendant Robert Franklin appeals. *Affirmed.*

*W. M. Blakey* and *J. E. Williamson,* for appellant.

*W. H. Richardson, G. K. Denton, F. B. Posey* and *D. Q. Chappell,* for appellee.

WILEY, J.—Appellee was plaintiff below, and brought and prosecuted to a successful termination this action for the possession of, and to quiet title to, certain real estate. One Daniel Lee owned the real estate in fee simple at the time of his death, leaving, him surviving, a widow, who

was a childless second wife. After the death of Daniel Lee, his widow married appellant Robert Franklin, and died a short time after such marriage. Appellant claims that Daniel Lee died childless and without legal heirs, and that upon his death his property, being the real estate in question, vested in his widow; and that upon her death, she being without heirs, he inherited from her and took the whole estate. Appellee bottoms his right to the real estate in controversy upon the fact that he is the legitimate son of Daniel Lee by a former marriage, and his only heir at law. The mother of appellee, who is still living has been married three or four times. Her first husband was a man by the name of Cobb, with whom she lived several years, when he abandoned her, and she never knew where he went or what became of him. After her abandonment, she claims that she was begotten with child by Daniel Lee, out of wedlock, and that the fruit of such illicit cohabitation was and is the appellee; that about six or eight months after appellee was born, she and Daniel Lee were lawfully married by a minister in Louisville, Kentucky, where they both lived; and that ever after such marriage his father acknowledged and treated him as his son. It is argued by appellant that even if Daniel Lee and appellee's mother were married after his birth, and after his mother had been abandoned by her first husband, still such marriage was void in the absence of proof that Cobb was either dead or had been legally divorced; and that though such marriage might have taken place and appellee's father may have acknowledged and treated him as his son, yet such facts would not make him the lawful heir of his father, and hence his property would not descend to him. There is some confusion and conflict as to the dates of the several marriages of appellee's mother, and as to when he was born. So far as the record discloses, there is no Bible record of the marriage of appellee's parents. The parties to the

action are all colored people, and the memories of many of the witnesses, who are also colored, seem to be very defective and badly clouded by the lapse of years, for the main facts elicited by their evidence occurred many years ago. The cause was tried by a jury, resulting in a general verdict for appellee. With the general verdict the jury found specially as to certain facts by answering interrogatories propounded to them.

Appellant's motions for judgment *non obstante veredicto* and for a new trial were overruled, and he has assigned such rulings as error. He has not, however, discussed the overruling of his motion for judgment and has therefore waived his right to have it considered.

There were several reasons assigned for a new trial, and we will take them up in the order in which counsel have discussed them. The fifteenth reason for a new trial is based upon newly discovered evidence. Before taking up the question, it may be important to state some facts upon which there is confusion. The evidence of appellee's mother is to the effect that she was married to his father at the residence of Henry Adams, who at the time was pastor of a certain church in Louisville; that after their marriage they went immediately to the home of one Louis Smith, where they lived as husband and wife; also that she could not remember just when 'she was married to Daniel Lee, but that it was some time in the fall of 1874; that appellee was about six months old when they were married; that after that Daniel Lee acknowledged and treated him as his child; that in fact Daniel Lee was his father. The material facts about the marriage of appellee's father and mother, their going to the home of Louis Smith to live, their living there as husband and wife, and that Daniel Lee acknowledged and treated him as his son, are all corroborated by other witnesses. There is no direct or positive evidence of said marriage except the undisputed evidence of appellee's mother. There are some facts, however,

disclosed by the record which are strongly corroborative. Appellee's mother testified that no one was present at the marriage excepting the two contracting parties and the minister who performed the ceremony. The evidence shows that he is dead.

The newly discovered evidence, upon which appellant relies for a new trial, is set out in an affidavit by appellant, and relates to what Louis Smith would testify to if a new trial should be granted. The Louis Smith named in the affidavit is represented to be the same Louis Smith at whose house appellee's father and mother lived after their marriage. The facts to which appellant says he would testify are: (1) That said Lee and appellee's mother never lived in his house as husband and wife; (2) that they were never, to his knowledge, married; that the date of the birth of appellee was June 14, 1876; that he was born in the home of said Smith; that up to the time appellee's mother moved to Chicago, she never, to his knowledge, claimed to have been married to Daniel Lee, and that she continued to live in his home until she removed to Chicago. The affidavit states that after this action was commenced appellant engaged the services of a friend in Louisville, who knew Louis Smith, to confer with him, and learn what facts he could relating to the paternity of appellee and the marriage of his father and mother; that said friend did confer with Smith and reported to appellant; that said Smith informed him that on account of his being the husband of a sister of appellee's mother, he could not afford to render appellant any assistance, and expressed his opinion that the facts he knew would not be to appellant's interest, etc. The affidavit also shows that appellant employed an attorney in Louisville to assist him in procuring evidence who interviewed Smith with a view to taking his deposition, and that he refused to impart any information to said attorney, etc. The affidavit also states that the appellant made inquiry from persons living in the neighborhood of

Smith, as to whether they knew any facts concerning the matters in controversy, and that he was unable to obtain any information. It is further stated that the facts stated in the affidavit within the knowledge of Louis Smith came to appellant's knowledge since the trial of the cause, and within twenty-four hours of the time of his filing of the motion for a new trial; that Louis Smith still lives in Louisville, without the jurisdiction of the court, and that he has not had time to procure his affidavit. He also states that by reasonable diligence he could not ascertain that said Smith would have sworn to said facts before the trial or that he could prove the same by any other witness.

Recurring again to some facts disclosed by the evidence, it is important to state that one witness testified that when appellee's mother and father were returning from the minister's house, just after their marriage, she met them, and both spoke to her and told her that they had been married. The same witness also testified that they went to the house of Louis Smith, where they lived as husband and wife. Appellee also testified that since the first trial of the case he had seen a family Bible in which the date of his birth was recorded as being June 15, 1874. This is an important fact in considering one fact stated in appellant's affidavit in support of his motion for a new trial, and that is that Louis Smith would testify that appellee was born at his house June 14, 1876. Such fact is important to appellant for the reason that appellee's father was married to the woman, who survived him, on March 16, 1876, which would antedate appellee's birth, as fixed by Smith. The pertinency of these facts will become apparent when we come to consider the question of newly discovered evidence as a ground for a new trial.

There are four well established rules which should be applied in considering a motion for a new trial upon newly discovered evidence: (1) That a new trial will not be granted on the ground of newly discovered evidence where

such evidence is merely cumulative or corroborative of evidence given on the trial. *Simpson* v. *Wilson*, 6 Ind. 474; *Dodds* v. *Vannoy*, 61 Ind. 89; *Marshall* v. *Mathers*, 103 Ind. 458; *DeHart* v. *Aper*, 107 Ind. 460; *Offutt* v. *Gowdy*, 18 Ind. App. 602; *Watts* v. *Moffett*, 12 Ind. App. 399; *Eddingfield* v. *State, ex rel.*, 12 Ind. App. 312; *Richter* v. *Meyers*, 5 Ind. App. 33; *Westbrook* v. *Aultman, etc., Co.*, 3 Ind. App. 83. (2) A new trial will not be granted on the ground of newly discovered evidence where such evidence is merely for impeachment, or in contradiction of evidence given at the trial. *Green* v. *Beckner*, 3 Ind. App. 39; *Brittenham* v. *Robinson*, 18 Ind. App. 502; *Sullivan* v. *O'Conner*, 77 Ind. 149; *Martin* v. *Garver*, 40 Ind. 351. (3) The party applying for a new trial for newly discovered evidence must show diligence in attempting to procure it before the trial. *Morrison* v. *Carey*, 129 Ind. 277; *Anderson* v. *Hathaway*, 130 Ind. 528; *Crumrine* v. *Estate of Crumrine*, 14 Ind. App. 641; *Huntington, etc., Co.* v. *Mock*, 14 Ind. App. 221; *Watts* v. *Moffett*, 12 Ind. App. 399. (4) In order to warrant the granting of a new trial on the ground of newly discovered evidence, such evidence must be of a very material and decisive character. It should be such as to render it reasonably certain that another trial would bring about a different result. *Freeman* v. *Hutchinson*, 15 Ind. App. 639; *Thornburg* v. *Buck*, 13 Ind. App. 446; *Richter* v. *Meyers, supra; Westbrook* v. *Aultman, supra; Morrison* v. *Carey, supra; Smith* v. *State*, 143 Ind. 685.

Before we can say that the newly discovered evidence relied upon is sufficient to warrant the granting of a new trial, we must affirm that such evidence is not cumulative; that it is not in the nature of impeachment or contradiction; that appellant has shown reasonable diligence; and that with such evidence another trial would render reasonably certain a different result. If either of these essentials is absent, then the trial court correctly overruled the motion for a new trial. Applications for new trials on the

ground of newly discovered evidence are not regarded with favor.    *Morrison* v. *Carey, supra,* and authorities cited. Cumulative evidence is evidence of the same class upon the same point or points.    *Cooper* v. *Ellis,* 3 Ind. App. 142. Measured by this rule, the facts stated in the affidavits are merely cumulative, and are applicable to facts and points which were in dispute in the former trial, and concerning which witnesses testified pro and con.    The principal fact relied upon by appellant, as disclosed by the affidavits in support of the motion for a new trial, is the date of, the birth of appellee as stated by Smith.    The latter says appellee was born June 14, 1876.    Appellee testified that he was born June 14, 1874, and testified from a record of his birth which he saw in a Bible.    Both his mother and his aunt testified by deposition, which deposition was taken in 1897, and they both at that time placed his age at twenty-four years, and that would fix his birth in the year 1874. So, upon the question of appellee's birth, the newly discovered evidence is in the nature of impeachment or contradiction.    The newly discovered evidence relied upon is the same kind or class of evidence upon the same points introduced by appellant in support of his defense in the trial of the cause, and must be regarded as merely cumulative or contradictory.    Is the newly discovered evidence of a very material and decisive character, and is it such as to render it reasonably certain that another trial would bring about another result?

In the case of *Cooper* v. *State,* 120 Ind. 377, 383, the court said: "New trials for newly . discovered evidence ought only to be granted after the most careful scrutiny of the evidence alleged to have been discovered, and when it raises a violent presumption that a different result would be reached upon a second trial," citing Thompson, Trials, §2759.    To our minds the newly discovered evidence relied on does not raise any presumption that a different result would be reached upon a second trial.    As we have seen,

such evidence is merely cumulative and contradictory of other evidence in the record, and we can not believe, upon the evidence upon which the case was tried and the newly discovered evidence submitted to a jury, that it would lead to any different result. It follows, therefore, that the motion for a new trial, based on newly discovered evidence, was correctly overruled. This makes it unnecessary for us to pass upon the question of diligence, which counsel have discussed at some length.

Our attention is next called in argument to alleged error in giving certain instructions. Appellant's principal objection to the instructions is directed against numbers four, eleven, fifteen, and seventeen. The sum and substance of instruction number four is that the court told the jury that, to entitle appellee to recover, he must prove by a fair preponderance of the evidence that he was the illegitimate son of his mother, Mary; that his father, Daniel, married his mother, and subsequent to such marriage he acknowledged appellee as his own son; that under the law, if a man marry the mother of an illegitimate child, and subsequent to such marriage acknowledge the child to be his own son, that would legitimatize such child and make him capable of inheriting from such father. Instruction number eleven informs the jury that it was not necessary, for appellee to recover, that his father and mother were married before his birth, but that if they were married subsequent to his birth, that Daniel Lee was his father, and recognized him as his son, and acknowledged him as such, then for all purposes of this case he should be considered the legitimate child of said Daniel. The fifteenth instruction is so like the fourth that it need not be set out in the opinion. The seventeenth instruction is upon the same line, and in it the court told the jury if they found from the evidence that Daniel Lee and appellee's mother were not married, their verdict should be for appellant; that, in order to entitle appellee to recover, he must show that he was the illegiti-

mate son of his mother; that his mother and Daniel Lee were married, and that subsequent to such marriage Daniel Lee acknowledged him as his son and child; and that if the jury should find such facts from the evidence, then their verdict should be for the appellee.

All these instructions may be considered together, for they relate to the single question of appellee's right to inherit from his father Daniel Lee. Fortunately there are statutes, both in Kentucky and Indiana, touching the rights of children born out of lawful wedlock, where the mother of such child subsequently marries and her husband acknowledges such child as his own, which makes it easy to put a proper construction on these instructions. The Kentucky statute is as follows: "If a man having had a child by a woman shall afterwards marry her, such child or its descendants, if recognized by him before or after marriage, shall be deemed legitimate." The Indiana statute is as follows: "If a man shall marry the mother of an illegitimate child and acknowledge it as his own, such child shall be legitimate." §2631 Burns 1901. As to the right of appellee to inherit from Daniel Lee, the statute in this State will govern, for it is a statute of descent. See *Harvey* v. *Ball,* 32 Ind. 98. See, also, *Binns* v. *Dazey,* 147 Ind. 536. Under these statutes and authorities, we are unable to see any objections to the instructions under consideration. They correctly state the law and determine the *status* of appellee upon the facts to which the instructions are applied.

The marriage of appellee's father and mother, if it took place at all, was in Kentucky, and is therefore governed by the laws of that state. Under the law as declared by the court of appeals of Kentucky, common law marriages have not been recognized since 1852, and that since that time a formal celebration by an authorized person is necessary. *Estill* v. *Rogers,* 1 Bush 62. Appellant argues that under the law of Kentucky no one is authorized to solemnize a

marriage until a license has been obtained, and that a license can only be issued by the clerk of a county court where the female resides, unless she is of full age or a widow, etc. Further, that it does not appear from the record that any license was ever issued in Louisville, where appellee's mother lived, authorizing her marriage to Daniel Lee, and hence such marriage is void. True, there are such statutory provisions in Kentucky as indicated, and, though they are penal, they must be regarded as merely directory. Mr. Bishop on Marriage, Divorce and Separation, at §§423, 424, declares the rule to be that statutes on the subject of marriage, even though penal, are merely directory, and a marriage celebrated, though not in accordance with the forms of the statute, is nevertheless valid. It is only when the statutes specifically provide that failure to comply with its provisions renders the marriage void, that it is void. See 14 Am. & Eng. Ency. Law, 514; *Dumaresly* v. *Fishly,* 10 Ky. 368. There is, however, a statute in Kentucky which provides that a marriage not celebrated before an authorized person shall be void. This statute, however, has no force here, for the marriage of appellee's father and mother, if celebrated at all, was celebrated before a minister of the gospel, who is an authorized person to celebrate marriages.

The appellant attacks the validity of the marriage on the ground, also, that it is not shown that any license was issued authorizing its celebration, and, as the Kentucky statutes directed the procurement of such license, in its absence the marriage was void. We are inclined to the view that it was not necessary for appellee, in order to recover, to establish that each and every provision of the statute had been complied with. When he has established the fact that a celebration of the marriage of his father and mother had taken place, the presumption of the law is that it was regular, and that the burden of proving to the contrary was on the appellant. The only evidence that no

license was issued was that no record of such could be found in the proper office of Louisville, where a register of the issuing of marriage licenses is required to be kept. Also that no certificate of the officiating clergyman could be found. It would most certainly be an unreasonable rule, to hold that if no record of the issuing of the marriage license or the return of the officiating clergyman could be procured, the marriage should be declared void. The conjugal relations are too sacred, and the institution of marriage with its far reaching results too important, to be disturbed by such fine technicalities. To hold to the contrary would make it possible to disrupt homes, destroy the happiness of families, cast odium upon children born in lawful wedlock, and disturb society. Marriage and its sanctity do not rest upon any such uncertain foundation. In this case appellee's mother, when she was married to his father, was of lawful age and presumably a widow. Under the law of Kentucky, to which we have referred, it is not essential, therefore, that a license authorizing the marriage should issue in the county where she lived. It could have been issued in any other county of the state, and the celebration take place in Louisville. It seems to be the accepted rule in this country that if the celebration of a marriage is proved, the validity of the marriage, the contract, and the capacity of the parties is presumed. Society rests upon marriage; the law favors it, and when a man and woman have contracted marriage in due form the law will require clear proof to remove the presumption that the contract is legal and valid. *Wilkie* v. *Collins,* 58 Miss. 510. And so if a marriage celebration be proved, it is presumed that the celebrant was duly authorized; that the proper preliminaries, as obtaining the license, had been complied with; that the place and forms used were legal. See 14 Am. & Eng. Ency. Law, 520-522; *Wilkie* v. *Collins, supra; Fleming* v. *People,* 27 N. Y. 329; *Blanchard* v. *Lambert,* 43 Iowa 228, 22 Am. Rep. 245.

In the case of *Boulden* v. *McIntire,* 119 Ind. 574, 580, 12 Am. St. 453, the 'Supreme Court used the following language: "Every intendment of the law is in favor of matrimony. When a marriage has been shown in evidence, whether regular or irregular, and whatever the form of the proof, the law raises a strong presumption of its legality; not only casting the burden of the proof on the party objecting, but requiring him throughout, and in every particular, plainly to make the facts appear, against the constant pressure of this presumption, that it is illegal and void. So that it can not be tried like ordinary questions of fact, which are independent of this sort of presumption." The presumption in favor of marriage and the legitimacy of children is one of the strongest known to the law, and in favor of a child asserting its legitimacy this presumption applies with peculiar force. *Teter* v. *Teter,* 101 Ind. 129, 51 Am. Rep. 742. In the case last cited it was held also that a marriage is not rendered void by a failure to procure a license. So, in this case, if it be conceded that no license was issued, such fact would not render the marriage void. Again, appellant seeks to impeach the marriage of appellee's father and mother on the ground that her former marriage with Cobb had not been dissolved and that there is no proof that he was dead. Upon this proposition the burden was upon appellant, for he must overcome the presumption of the legality of the marriage upon which appellee relies. This he has wholly failed to do. See *Wenning* v. *Teeple,* 144 Ind. 189.

In Kentucky, in the case of *Dannelli* v. *Dannelli,* 4 Bush 51, the following rule is declared: "The mere cohabitation of two persons of different sexes, or their behavior in other respects as husband and wife, always affords an inference of greater or less strength that a marriage has been solemnized between them. Their conduct being susceptible of two opposite explanations, *we are bound to assume it to be moral rather than immoral,* and credit is to be given to their

own assertion, whether express or implied, of a fact peculiarly within their own knowledge. * * * The law is unwilling to bastardize children, and throws the proof on the party who alleges illegitimacy; and in the absence of evidence to the contrary, a child *eo nomine* is therefore legitimate. The presumption of legitimacy is not lightly repelled by a mere balance of probabilities; the evidence for repelling it must be strong, satisfactory, and conclusive."

The fourth cause assigned for a new trial is that the court erred in admitting in evidence a certain telegram sent to appellee at Chicago by Kate Lee, the wife of Daniel Lee. In appellant's supplemental brief at page 1, counsel say: "Beginning at page 159, line eight, of the record, appellee testified that he was informed of Tobe [Daniel] Lee's death by telegram." Turning to the transcript at page 159, we are unable to find any such evidence. Upon that page appears the direct examination of another witness. Again the transcript is double paged, *i. e.,* the pages are numbered both at the top and bottom. The bottom paging runs to 312, while the top paging runs only to 188; but upon neither page 159 is to be found the evidence referred to. This is a total disregard of the rule which requires counsel in discussing questions arising on the admission or exclusion of testimony to refer to the particular testimony, and specify by pages and lines the part of the record where it appears. It has too often been ruled that an appellate tribunal is not required to run through a voluminous record to find where and how a particular question may be found, that has been raised by counsel, to require the citation of authorities. Rules of court have the effect of rules of law, and when such rules are framed and put in force, parties to suits as well as counsel are bound by them. *Smith* v. *State, ex rel.,* 137 Ind. 198; *Smith* v. *State, ex rel.,* 140 Ind. 340. For failure to call the court's attention to the record where the alleged objectionable evi-

dence may be found, counsel have forfeited their right to have it considered.

The seventh, eighth, and ninth causes for a new trial question the action of the court in admitting in evidence and permitting the same to be read in evidence over appellant's objections, three decisions of the court of appeals of Kentucky for the purpose of proving what the law of that state was in regard to marriage, etc. We have given to the objections urged to the introduction of this evidence, and the argument of counsel thereon, due consideration, and we are unable to reach the conclusion that appellant was harmed thereby or that the court committed any error in admitting it.

It is finally urged that, under §507 Burns 1901, appellee was an incompetent witness. This position is assumed by appellant's counsel upon the theory, suggested by them, that if appellee is the heir of Daniel Lee, then at the latter's death his real estate descended one-half to his widow and the other half to appellee, and that at the death of the widow (she having subsequently married) he would take as her forced heir, and hence he was incompetent to testify to any conversation with her. Counsel must be bound by the position they assume. The statute quoted provides that in all suits by or against the devisees founded on contract with, or demand against, the ancestor, to obtain title or possession of property, real or personal, of or in right of such ancestor or to effect the same in any manner, neither party to such suit shall be competent witness as to any matter which occurred prior to the death of the ancestor. The only objection urged by counsel for appellant is that "he [appellee] was incompetent to testify to any conversation with her" (Daniel Lee's widow). This objection is too broad, for it goes to conversations with her both before and after the death of appellee's father. Neither have counsel in discussing this objection, cited us to the page and line,

or pages and lines, of the transcript, where the supposed objectionable evidence may be found. Under the rule stated, they are not entitled to have it considered. This disposes of all points raised by the briefs.

The facts specially found by the jury fully warrant the finding and judgment. A just conclusion was reached by the trial court, as disclosed by the whole record. Judgment affirmed.