## LANGDON ET AL. *v.* LANGDON.

[No. 26,265. Filed December 7, 1932. Rehearing denied January 30, 1933.]

*Roemler, Carter & Rust,* for appellants.
*Charles B. Clarke* and *Walter O. Clarke,* for appellee.

ROLL, J.—In this action the appellee alleged in her complaint that she is the widow of one William Langdon, who died intestate seized of an undivided one-half interest in certain real estate as a tenant in common with his brother, John D. Langdon; that the interest of her said husband in said real estate was worth approximately $12,500.00; that there are no children of said marriage, but that Charles A. Langdon is the father of her deceased husband and that his mother is dead; that as such widow she is entitled to three-eighths of said entire real estate and the father is entitled to one-eighth thereof and the brother John D. Langdon four-eighths thereof. Her complaint was in two paragraphs, the first paragraph asking that her title be quieted, and the second paragraph asking for partition. The other brothers and sisters of the decedent, LeRoy, Frank, and Rose Langdon, and Mary Langdon Hershberger, filed

an intervening petition asking to be made parties which was granted. All defendants below then filed an answer in general denial to each paragraph of the complaint and they also filed two additional affirmative paragraphs of answer which they denominated counterclaims. In each of said affirmative pleadings they alleged that Charles A. Langdon was the father of William Langdon, deceased, and that the other appellants were his brothers and sisters; that he died intestate and that they were his only heirs at law; that said deceased William Langdon was insane and while insane the appellee took him from a hospital where he was being treated for his mental disease and took him to Greenfield, Hancock County, Indiana, where she procured a marriage license to be issued to her and to him and caused a marriage ceremony to be performed; that she ever after claimed to be the wife of said William Langdon, and that her claimed interest in said real estate depended solely upon her being the lawful wife of said decedent; that she had no interest in said real estate and that they were the owners of same. The first paragraph of counterclaim asked that the title of appellants be quieted and the second paragraph asked that the said pretended marriage be declared to be void. To each of these paragraphs of answer a demurrer was sustained and an exception taken by the appellants.

The court tried the case upon the two paragraphs of complaint and the answer of general denial and rendered a judgment and decree quieting appellee's title to three-eighths of said real estate. The judgment and decree also found that John D. Langdon owned four-eighths of said real estate, and that the father, Charles A. Langdon, owned one-eighth thereof. The court also found for the appellee on her paragraph for partition and found the real estate could not be partitioned among the several owners without injury to the parties and should be sold

and the proceeds divided between the parties according to the finding.

There was a motion made for a new trial which was overruled and an exception taken and this appeal perfected. The errors relied upon for reversal are: (1) The court erred in sustaining the demurrer of the appellee, Grace Langdon, to the second paragraph of answer; (2) the court erred in sustaining the demurrer of said appellee to the second paragraph of counterclaim; (3) the court erred in overruling the appellants' motion for a new trial. The motion for a new trial contains 11 grounds, the first and second of which are as follows: (1) The decision of the court is not sustained by sufficient evidence; (2) the decision of the court is contrary to law. The last nine grounds each relate to alleged error of the court in excluding certain evidence as to the alleged insanity and mental condition of the deceased husband, William Langdon, at or before the time of the marriage or within a few months thereafter.

The marriage ceremony between the appellee and the deceased took place September 15, 1923, and they lived together as husband and wife until the husband died on March 24, 1929. The crux of this case is found in the record on pages 85 and 86 thereof. While John D. Langdon, a brother of the deceased husband, was on the witness stand he was asked the following question: "State whether or not in your opinion William Langdon was sane or insane on September 15, 1923, basing your opinion on what you heard or saw him do." To this question the appellee objected substantially as follows: That the defendants (appellants) cannot raise the validity of the marriage between the appellee and the deceased and cannot assert that said marriage was void on account of the mental condition of William Langdon and are foreclosed from proving his mental condition at the time of the alleged marriage or shortly before. The appel-

lants then made the following offer to prove: "Defendants offer to prove by this witness if permitted to answer that William Langdon was insane on September 15, 1923." The court sustained the objection to which ruling the appellants excepted. The attorney for the appellants then asked the court the following question: "May the court say and the record show that if any other witness were put upon the stand to testify substantially to the same line of questions that have been propounded to this witness that the ruling would be the same?" To this question the court replied as follows: "The ruling would be the same in the absence of any showing of adjudication of unsoundness of mind prior to the time of marriage." From a careful reading of the record it is clear that no adjudication of unsoundness of mind of the deceased, William Langdon, was made prior to the date of the marriage, September 15, 1923. Neither of said affirmative paragraphs of answer allege that there had been an adjudication of unsoundness of mind of decedent prior to the marriage. There was no offer to prove that there was any adjudication of unsoundness of mind prior to the marriage. The evidence discloses that a short time before the marriage the appellee had been in California and when she returned she and the deceased were married; that the deceased had been in a hospital for approximately one month prior to the marriage. Appellee testified that she had no knowledge what he was being treated for at the hospital. Her evidence in part is as follows: "Mr. Langdon was not ill the day that I went to Greenfield to get married; he seemed to me to be perfectly well. I had known that he had been in the hospital part of the time for a month prior to that date."

We will first discuss appellants' first and second assignments of error, viz., Did the court err in sustaining appellants' demurrer to the cross-complaint? The

substance of these pleadings are set out above. As we understand appellants' contention, it may be stated thus: That under §9862 Burns R. S. 1926, the ostensible marriage of William Langdon and Grace Langdon on September 15, 1923, was absolutely void by reason of the alleged insanity of the said William Langdon at the time, and if said marriage was void Grace Langdon never became the wife of William Langdon, and therefore had no interest in the real estate involved. Section 9862, *supra*, provides that: "The following marriages are declared void: First. Where either party has a wife or husband living at the time of such marriage. Second. When one of the parties is a white person and the other possessed of one-eighth or more of negro blood. Third. When either is insane or idiotic at the time of such marriage."

Whether the marriage of a person, who, at the time is insane, is void or voidable was very ably discussed in the case of *Wiley* v. *Wiley* (1919), 75 Ind. App. 456, 123 N. E. 252, 254, cited and relied upon by the appellants. In that case the heirs at law made claim to the property of the deceased Hugh F. Wiley by virtue of the laws of descent of the State of Indiana, and denied the claimed interest of Emma Bagby Wiley, who claimed the property as the widow of said decedent. The complaint contained many allegations covering a variety of elements which tend to a common purpose, but the substance of the material allegations is to the effect that at the time of the pretended marriage, and for more than two months prior thereto, and continuously thereafter until his death, the said Hugh F. Wiley was an insane person. The relief asked was that the ostensible marriage be adjudged void. The court in this case said:

". . . The ultimate purpose of the action is to determine who are the heirs at law and entitled to take the estate of the deceased. Under the facts

averred, if the ostensible marriage is void, then Emma Bagby Wiley has no interest in said estate. . . . The purpose of the action is as unmistakable as if appellants had filed a complaint to quiet title to the real estate under §1116 Burns 1914, §1070 R. S. 1881, or to make proof of heirship or title under §2928 Burns 1914, §2406 R. S. 1881.

"Appellants are not seeking to dissolve a voidable marriage. They rest their claim to the estate on the unequivocal theory that the pretended marriage is void."

The Appellate Court in the Wiley case, after a very full discussion of the various statutes and the law affecting marriage of the insane, reached the following conclusion:

"In view of all the legislation on this subject, we have no doubt that it is the purpose and policy of the Legislature to protect the citizens of the state from the evil consequences which would inevitably result from the marriage of the insane. The legislative effort to afford this protection would be nullified by holding such marriages voidable. . . . We are of the opinion that the word 'void' in said §8360, *supra*, is accurately used, and that under the facts averred in the complaint the ceremonial marriage of Hugh F. Wiley and Emma Bagby is void."

We think this case is well reasoned and fully supported by the authorities therein cited and for this reason do not deem it advisable to take the time and space to discuss at any length the questions therein set out and, therefore, on the authority of that case and the cases therein cited, we hold that under the facts pleaded in appellants' second paragraph of answer, and their counterclaim, the ceremonial marriage of William Langdon and Grace Langdon was void. Therefore, the first part of appellants' contention as stated above, we think is correct.

Having reached the conclusion that the ceremonial marriage of William Langdon and Grace Langdon con-

summated on September 15, 1923, was void, does it necessarily follow that Grace Langdon was not the lawful wife of William Langdon at the time William Langdon died on March 24, 1929? We do not think so, under the facts of this case. It will be observed that the facts as shown by the complaint in the Wiley case are to the effect that Hugh F. Wiley was insane at the time the ceremonial marriage took place, and also that he remained insane all the time thereafter until his death. We find no allegation in appellants' second paragraph of answer nor in their counterclaim that William Langdon remained insane at all times after the ceremonial marriage until his death.

While it is true that after a person is once adjudged insane, or the fact of one's insanity is established, there arises a presumption that such condition continues till the contrary is shown, and until his sanity is established, and such person would, during such time, be incompetent to effect a valid marriage or to enter into any other valid contract whatsoever. Such is the rule where the question involved relates to ordinary business transactions in which the public has no interest. *Redden* v. *Baker* (1892), 86 Ind. 191. But where the legality of a marriage is involved, as in this case, we are confronted with another presumption, viz., the presumption of the legality of the marriage relation. The question, therefore, is, which is the stronger presumption, that of continued insanity of William Langdon for a period of almost five and one-half years, and consequent adultery, or that of restoration of sanity and legitimate cohabitation? If we presume that William Langdon regained his sanity before his death, and continued to live and cohabit with Grace Langdon as husband and wife, being accepted in society as such, the law will presume a good common-law marriage, the

presumption being in favor of morality and not immorality, legitimacy and not bastardy. *Boulden* v. *McIntire* (1889), 119 Ind. 574, 21 N. E. 445, 12 Am. St. Rep. 453; *Castor* v. *Davis* (1889), 120 Ind. 231, 22 N. E. 110, 111.

> "Every intendment of the law is in favor of matrimony. When a marriage has been shown in evidence, whether regular or irregular, and whatever the form of the proof, the law raises a strong presumption of its legality; not only casting the burden of proof on the party objecting, but requiring him throughout, and in every particular, plainly to make the fact appear, against the constant pressure of this presumption that it is illegal and void. So that it can not be tried like ordinary questions of fact, which are independent of this sort of presumption." Bishop on M. & D., Vol. 1, 6th Ed., §457.

In the case of *Teter* v. *Teter* (1884), 101 Ind. 129, 51 Am. Rep. 742, we find facts very similar to the one at bar. In that case the parties intermarried at a time when the husband had a living wife, who afterwards obtained a divorce from him, and the parties cohabited together after the granting of such divorce, it was held that the law would presume a good common-law marriage, the presumption being in favor of morality and not immorality, marriage and not concubinage, legitimacy and not bastardy.

In the case of *Castor* v. *Davis et al., supra,* we have a case where the facts are in some respects stronger than the facts in the case under consideration. In the Castor case, John Blackburn was adjudged a person of unsound mind by a court of competent jurisdiction on the 14th day of August, 1840, and a guardian was appointed for him who served till August, 1846. In November, 1843, while the guardianship was still in force, he married Esther Conrad, and they lived together until

his death in September, 1873. There was never any determination by any court that the said John Blackburn had been restored to sanity.

It is true that in the Castor case the parties lived together for a longer period than in the present case, yet we do not believe that the difference in the time the parties lived together would prevent the application of the rule stated in the Castor case to the present facts.

The following excerpt from the *Castor* v. *Davis* case we think is applicable and helpful in determining the question before us.

"Whatever the presumption arising from the record made in 1840 may be when applied to ordinary contracts, we do not think it should be permitted to overcome the presumption in favor of the legality of a marriage where the parties lived together as husband and wife for more than a quarter of a century."

The court held in that case that there was a good common-law marriage between Mr. and Mrs. Blackburn.

We may summarize our conclusions in this case as follows: The court did not err in sustaining appellants' demurrer to the second paragraph of answer and to the cross-complaint for the reason that the same contained no allegation to the effect that William Langdon remained insane all the time from the date of his pretended marriage to Grace Langdon on September 15, 1923, until his death, and for this reason said pleadings were insufficient to withstand a demurrer.

The court did not err in overruling appellants' motion for a new trial, for the reason that the evidence does support the verdict and is not contrary to law, and it was not reversible error to exclude the offered testimony of John D. Langdon to the effect that William Langdon was insane on September 15, 1923, the date of the ceremonial marriage, for the

reason, that even though the evidence had been received and the fact established it would have had the effect only of rendering the ceremonial marriage void. But for the reasons set out in this opinion we hold that the facts are sufficient in the absence of any showing to the contrary that the law will presume a good common-law marriage between the parties and that Grace Langdon was the common-law wife of William Langdon at the date of his death and as such was entitled to the decree rendered in her favor by the lower court.

We find no reversible error in the record. Judgment affirmed.