## AZIMOW *v.* AZIMOW ET AL.

[No. 468A61. Filed March 3, 1970. Rehearing denied April 21, 1970.
Transfer denied March 24, 1971.]

*Royse, Travis, Hendrickson & Pantzer,* of Indianapolis for appellant.

*Henry E. Bradshaw* and *Grace M. Curry, Bingham, Summers, Welsh & Spilman,* Indianapolis, of counsel, and *Paul E. Schrenker, Schrenker & Schrenker,* Anderson, for appellees. lees.

CARSON, J.—This appeal arises from a judgment entered against appellant upon a petition for the determination of heirship of Benjamin Azimow. Petitioner-appellant alleges that she is the surviving widow of Benjamin (Ben) Azimow by virtue of a common-law marriage purportedly consummated in 1941.[1] Appellant sought below an adjudication of her rights as such surviving widow. The issues were framed upon the petition, no answer thereto being required. The trial court, subsequent to a hearing, found against petitioner-appellant and entered judgment accordingly.

Appellant specifies in her motion for a new trial that the decision of the court is contrary to law; that the decision of the court is not sustained by sufficient evidence; and that the trial court committed various errors of law during the hearing of this cause in sustaining objections to questions, and in refusing to permit the introduction of certain exhibits. The overruling of appellant's motion for a new trial is the sole error assigned. This being an appeal from a negative judgment, the specification that the

---

1. As the effective date of Acts of 1957, ch. 78, § 1, p. 138, Ind. Stat. Ann., § 44-111, Burns' 1965 Repl., was January 1, 1958, the purported marriage herein was allegedly consummated at a time when this State recognized a valid common-law marriage.

decision of the court is not sustained by sufficient evidence, presents nothing for our consideration. *Pokraka* v. *Lummus Co.* (1952), 230 Ind. 523, 104 N. E. 2d 669.

In support of the specification that the decision of the trial court is contrary to law, appellant advances two propositions: 1) that once a common-law marriage is shown in evidence, the law creates a strong presumption of its validity, at which time it becomes incumbent upon those opposing its existence to come forth with evidence sufficient to rebut that presumption; and 2) appellant would have this court adopt the theory of a "secret common-law marriage."

In support of the first proposition above, appellant cites as authority the following decisions: *Langdon* v. *Langdon* (1933), 204 Ind. 321, 183 N. E. 400, 85 A. L. R. 1297; *Castor* v. *Davis et al.* (1889), 120 Ind. 231, 22 N. E. 110; *Boulden et al.* v. *McIntire* (1889), 119 Ind. 574, 21 N. E. 445; *Teter* v. *Teter* (1885), 101 Ind. 129, 51 Am. Rep. 742; *Haddon* v. *Crawford* (1912), 49 Ind. App. 551, 97 N. E. 811; *Franklin* v. *Lee* (1902), 30 Ind. App. 31, 62 N. E. 78 (Transfer denied).

If appellant is correct in her assertion that once a common-law marriage is shown in evidence a presumption of its validity arises, such a presumption should be invoked herein as petitioner-appellant's evidence, standing alone, would be sufficient to warrant the invocation of presumed validity. Likewise, and as a result thereof, the test to be applied by this court would be: As a matter of law, is the evidence of record taken in a light most favorable to appellees, sufficient to overcome that presumption? If the application of that test should provide a negative answer, the decision of the trial court would be deemed contrary to law. *Teter* v. *Teter, supra.*

However, should this court resolve not to invoke the asserted presumption, the test to be applied in this case would be as stated in *Pokraka* v. *Lummus Co., supra,* (1952), 230 Ind. 523, at page 532, 104 N. E. 2d 669, at page 673:

"It is only where the evidence is without conflict and can lead to but one conclusion, and the trial court has reached an opposite conclusion, that the decision of the trial court will be set aside on the ground that it is contrary to law."

After a review of the cases above, cited by appellant, we conclude that the sole authority for the proposition advanced is *Langdon* v. *Langdon, supra.*[2] Appellant quotes language from *Langdon, supra,* wherein, at pages 328-29 of 204 Ind. page 403 of 183 N. E., the Supreme Court stated:

"The question, therefore, is, which is the stronger presumption, that of continued insanity of William Langdon for a period of almost five and one-half years, and consequent adultery, or that of restoration of sanity and legitimate cohabitation? If we presume that William Langdon regained his sanity before his death, and continued to live and cohabit with Grace Langdon as husband and wife, being accepted in society as such, the law will presume a good common-law marriage, the presumption being in favor of morality and not immorality, legitimacy and not bastardy."

A "presumption of law" was defined by our Supreme Court in *City of Indianapolis* v. *Keeley* (1906), 167 Ind. 516, at page 527, 79 N. E. 499, at page 503:

"Presumptions of law are such inferences as are warranted by the legal experience of courts in administering justice, and are usually founded upon reasons of public policy and social convenience and safety."

It is our opinion that current "reasons of public policy and social convenience" as enunciated by the General Assem-

---

2. We feel that the other decisions cited by appellant are distinguishable upon the facts. In each of those cases: *Haddon* v. *Crawford* (1912), 49 Ind. App. 551, 97 N. E. 811; *Boulden, et al.* v. *McIntire* (1889), 119 Ind. 574, 21 N. E. 445; and *Franklin* v. *Lee* (1902), 30 Ind. App. 31, 62 N. E. 78, it appears that the alleged marriage in question was a ceremonial, statutory marriage. In other cases: *Teter* v. *Teter* (1885), 101 Ind. 129, 51 Am. Rep. 742, and *Castor* v. *Davis et al.* (1889), 120 Ind. 231, 22 N. E. 110, the alleged common-law marriage was asserted by one other than the party to the marriage.

bly[3] and by the latest decisions of this court and our Supreme Court,[4] no longer support the application of a presumption such as appellant herein asserts. The General Assembly, in 1957, abolished common-law marriages purportedly consummated after January 1, 1958.

This court in *Estate of Dittman* v. *Biesenbach, Admr., etc.* (1953), 124 Ind. App. 198, at pages 209-10, 115 N. E. 2d 125, at pages 130-31, stated:

> "Common-law marriages are recognized in Indiana, but since they are a fruitful source of perjury and fraud, they are merely tolerated and are not encouraged. Even if there is a purported contract of common-law marriage, which in this case we do not find to exist, it must be examined with great scrutiny, and, in order to sustain it, it must plainly appear that there was an actual mutual assent between the parties and a holding out to the public in which they lived. A common-law marriage, such as was sought to be established in this case we believe implies that both parties are able and willing to marry and that they solemnly entered into a contract of marriage in terms of the present tense for the purpose of establishing the immediate relation of husband and wife, and, if any of the essential requirements are lacking as herein pointed out, the relation becomes illicit and meretricious and not a valid common-law marriage."

The above language was quoted with approval by the Supreme Court of Indiana in *Anderson* v. *Anderson, supra* (1956), 235 Ind. 113, 131 N. E. 2d 301.

Further, this court in *Estate of Dittman* v. *Biesenbach, Admr., etc., supra,* at page 211 of 124 Ind. App., page 131 of 115 N. E. 2d, stated:

> "The burden rested upon the appellee to establish by a preponderance of evidence of probative value that these

---

3. Ind. Stat. Ann., § 44-111, Burns' 1965 Repl.

4. *Anderson* v. *Anderson* (1956), 235 Ind. 113, 131 N. E. 2d 301; *In re Sutherland's Estate* (1965), 246 Ind. 234, 204 N. E. 2d 520; *Estate of Dittman* v. *Biesenbach, Admr., etc.* (1953), 124 Ind. App. 198, 115 N. E. 2d 125; *In re DeWitte* v. *DeWitte* (1966), 140 Ind. App. 114, 222 N. E. 2d 285.

parties made and entered into a contract of marriage in words of the present tense, that mutuality existed in this contract and that there was a holding out of such relationship in the community where they lived. Common-law marriages should be recognized with caution by courts and should not receive judicial sanction if the conduct of the parties fails to show clearly an honorable, abiding agreement entered into, and that the same existed before the eyes of the community. *McChesney* v. *Johnson* (1935), (Texas) 79 S. W. 2d 658."

The Supreme Court of Indiana, by way of explanation of the *Anderson* decision, in *In re Sutherland's Estate* (1965), 246 Ind. 234, at page 238, 204 N. E. 2d 520, at page 522, stated:

"The basis for that decision was that in this day and age the law does not look with favor upon common law marriages, since a public record and ceremony may be made thereof with ease, and thereby set at rest any questions of title or interest in property, inheritance or legitimacy of children. We are not living in the frontier days where hardships existed in attempting to make a public record of a marriage."

The trend enunciated in these later decisions was expressly recognized by this court in *In re DeWitte* v. *DeWitte* **(1966)**, 140 Ind. App. 114, at page 118, 222 N. E. 2d 285, at page 287, where it was stated:

"The body of case law governing common-law marriages in Indiana is extensive. An examination of these cases discloses the gradual emergence of a progressive attitude by the courts in laying down more and more stringent legal requirements when validating common-law marriages. The ultimate effect of this progressive attitude of the court and the disfavor of public opinion led to the abolition of common-law marriages in this state."

In light of legislative action and the position expressly stated by this court and our Supreme Court in later decisions, we hold that to the *extent* the *Langdon* case, or any other past decision of the courts of this State, can be construed to stand for the proposition that once a

*party*[5] to an alleged common-law marriage introduces evidence of the essential elements thereof, a presumption of validity arises and the burden of going forward with evidence sufficient to rebut that presumption shifts to those opposing its existence, it no longer enunciates the current policy of this State and is, therefore, overruled.

As a consequence of our decision that petitioner-appellant's position herein is not aided by legal presumption, her specification that the decision of the trial court is contrary to law requires of us only to consider the evidence most favorable to appellees. *Pokraka* v. *Lummus Co., supra.*

That evidence may be summarized as follows:

During a 13-year period immediately preceding his death, Benjamin Azimow executed, under oath, in excess of eighty legal documents (including deeds and mortgages) in each of which he referred to himself as an "unmarried man"; Mary Williams (petitioner-appellant herein) prepared and acknowledged as a notary, most of these documents; preceding the filing of her petition herein, petitioner-appellant filed a claim for services against Benjamin Azimow's estate; petitioner-appellant was continually registered to vote in the name of "Mary Williams"; petitioner-appellant's name appeared in the telephone book as "Mary Williams"; decedent referred to petitioner-appellant in his will as his "loyal and faithful employee"; and, some rather prominent citizens of the community testified that it was their opinion that Benjamin Azimow and Mary Williams were not man and wife. It is of further interest to note that the record discloses only two instances in which petitioner-appellant overtly claimed to be the wife of Benjamin Azimow. One Dorothy Gough, a witness for petitioner, was asked the question: "Now, did Mary ever hold herself out to your knowledge as Mary Azimow?" In re-

5. It should be made clear that this decision only controls as to a party to an alleged common-law marriage. Likewise, we do not here pass upon any presumption of legitimacy which the law of this State affords to a child of an alleged common-law marriage.

sponse, she stated: "Yes, I have heard her." The only other evidence of petitioner's claim to the marital relationship is the filing herein of her petition for the determination of heirship.

We conclude from an examination of the record before us that the evidence upon all material issues in this cause was in conflict and that the testimony and actions of various witnesses were self-contradictory. To reverse this cause as contrary to law would be for us to disregard the sound judgment of the trial court, which we will not do.

As a second proposition in support of her contention that the decision of the court is contrary to law, petitioner-appellant asserts that as a matter of law all of the documentary evidence introduced by appellees in opposition to the existence of a common-law marriage is explainable and should not have been considered by the court. Petitioner-appellant contends that all recorded matters (deeds, mortgages, voting registration, telephone listing, etc.) of public cognizance, intentionally displayed an "unmarried" status of Benjamin Azimow and Mary Williams. Appellant asserts that such action was taken to maintain secrecy of the marital status from Benjamin Azimow's daughter, Maxine. Appellant cites a number of decisions from other jurisdictions and asks this court to adopt and implement herein the doctrine of "limited secrecy" in a common-law marriage.

We deem it obvious that the essence of a valid common-law marriage is a contract *de praesenti* and a uniform holding out of the marital relationship in the community of residence. *Anderson* v. *Anderson, supra; In re Lambert's Estate* (1945), 116 Ind. App. 293, 62 N. E. 2d 871 (Transfer denied); *Schilling* v. *Parsons, Administrator* (1941), 110 Ind. App. 52, 36 N. E. 2d 958.

We find the theory of "limited secrecy" repugnant to the basic requirement that the parties to an alleged common-law marriage uniformly conduct themselves in such a manner as to

establish the marital relationship in the eyes of the community. For that reason, we do not adopt petitioner-appellant's proposition.

In the motion for a new trial, petitioner-appellant specifies error in the court's exclusion of her Exhibit No. 4. Such exhibit appears of record in the following words and figures, to-wit:

"STATE OF INDIANA

           SS

COUNTY OF MARION

TO WHOM IT MAY CONCERN:

THIS IS TO CERTIFY THAT ON THE 12TH DAY OF FEBRUARY 1941, AT DURANGO, MEXICO, I, RABBI SAMUEL WEINSTEIN PERFORMED THE TRADITIONAL JEWISH WEDDING CEREMONY, UNITING IN MARRIAGE BENJAMIN AZIMOW OF ALEXANDRIA, INDIANA AND MARY ELIZABETH WILLIAMS OF SUMMITVILLE, INDIANA.

           /s/ Rabbi Samuel Weinstein
              RABBI SAMUEL WEINSTEIN

WITNESS:

/s/ Mrs. Samuel Weinstein

/s/ Alex Levinson

BEFORE ME A NOTARY PUBLIC IN AND FOR THE STATE OF INDIANA[,] COUNTY OF MARION[,] THE ABOVE PERSONS PERSONALLY APPEARED AND SIGNED THIS STATEMENT.

           /s/ George M. Rogers
MY COMMISSION EXPIRES
APRIL 20, 1942."

Petitioner-appellant contends that the above exhibit should have been admitted in evidence as *prima facie* proof of the facts stated therein. We disagree with that contention. The

document above, which appellant attempted to introduce, is in violation of the best evidence rule. Petitioner-appellant, in her brief, does not refer to any portion of the transcript wherein it was established that Rabbi Weinstein was not available to testify at the hearing and to subject himself to cross-examination. The document, to which petitioner-appellant refers as a "verified statement," is inadmissible on two other grounds: 1) it is not dated; and 2) the jurat does not declare that the statement was made under oath, but merely that it was executed.

For each of these reasons we feel that the trial court correctly excluded, as proof of the facts stated therein, petitioner-appellant's Exhibit No. 4.

Under the specification in her motion for a new trial, "Error of law occurring at the trial," petitioner-appellant asserts that the court erred in sustaining objections, and striking answers to questions. Petitioner-appellant in her brief only contends error in relation to the sustaining of an objection to one question. That question appears of record as follows:

"Q. Did Mary and Ben hold themselves out as husband and wife generally to the citizens of Alexandria?"

The above question calls for the opinion of a witness concerning a fact in issue, *i.e.,* was there a general holding out to the community. It is only where the details necessary for an intelligent opinion cannot be laid before the trier of the facts, that opinion evidence of the conclusion to be drawn from such details is admissible. *New Jersey, etc., R. Co.* v. *Tutt* (1907), 168 Ind. 205, 216, 80 N. E. 420.

The rule enunciated in *Tutt* has been applied to affirm the sustaining of objections to questions propounded in a trial to the court as well as to a jury. *McKee et al.* v. *Hasler et al.* (1951), 229 Ind. 437, 98 N. E. 2d 657; *State* v. *Reid* (1933), 204 Ind. 631, 185 N. E. 449, 86 A. L. R. 1442; *Southern Indiana*

*Power Co.* v. *Miller* (1916), 185 Ind. 35, 111 N. E. 925; *Webb* v. *Volz* (1951), 122 Ind. App. 53, 102 N. E. 2d 517.

We feel that the issue here, of "holding out," is subject to determination by the finder of fact and that detailed evidence could have been introduced to prove that issue. This statement is buttressed by the fact that the record reveals that during course of the proceedings several witnesses testified, in behalf of petitioner-appellant, to detailed instances relating to the actions of Benjamin Azimow which could have warranted the conclusion that the parties held themselves out as husband and wife. Therefore, we see no error in the ruling of the trial court.

Petitioner-appellant's last specification of error is that the court erroneously applied the "dead man's statute"[6] to preclude testimony of petitioner-appellant and Beth Azimow, alleged daughter of the asserted common-law marriage.

Judge Arterburn, speaking for our Supreme Court, in *In re Sutherland's Estate, supra* (1965), 246 Ind. 234, at pages 240-41, 204 N. E. 2d 520, at page 523, reviewed the Indiana case law under the "dead man's statute," and stated:

> "Testimony of the appellee as to 'any matter' which occurred prior to the death of the decedent is excluded under this statute. This includes transactions or actions as well as conversations.
>
> "One of the objects of these statutes is to prevent a person from testifying against an estate as to acts or conversations of the decedent when his lips are sealed by death. It is, in fact, a statute for the prevention of fraud.
>
> "To say that 'the litigation herein is not for the purpose of obtaining a judgment or allowance for or against the estate of the decedent' is not true. It is the very purpose of the appellee, as widow in this proceeding, to gain a widow's share in the estate. What she would gain would even have priority over the claims of creditors who are likewise incompetent to testify under the same statute. It does affect the amount to be distributed by the estate."

---

6. Acts 1881 (Spec. Sess.), ch. 38, § 277, p. 240, Ind. Stat. Ann., § 2-1716, Burns' 1968 Repl.

And, further, at page 243 of 246 Ind., page 524 of 204 N. E. 2d:

> "The testimony of the appellee claiming as a widow with reference to the 'ceremony' between her and the decedent to establish a common-law marriage was not  proper under the authorities of this state. *Norrell* v. *Norrell* (1942), 220 Ind. 398, 44 N. E. 2d 97; *Lowrance* v. *Lowrance* (1932), 95 Ind. App. 345, 182 N. E. 273."

Under the rationale of *Sutherland, supra,* we see no impropriety in the application by the trial court of the "dead man's statute."

For the foregoing reasons, the judgment of the trial court should be affirmed.

Judgment affirmed. Costs taxed against the appellant.

Lowdermilk, C.J., Cooper and Sullivan, JJ., concur.

NOTE.—Reported in 255 N. E. 2d 667.