·Teter v. Teter.

No. 9802.

## TETER v. TETER.

EVIDENCE.—*Decree of Foreign Court.—Record.—*A decree of a foreign court can only be proved by an authenticated transcript of the record thereof.

SAME.—*Decree of Divorce.—Dismissal.— Presumption.— Transcript.—*An authenticated transcript of an Ohio record, after showing a complaint for divorce, service of process and submission of the cause for hearing, ran thus: "April term, 1869, to wit, on the 28th of May, A. D. 1869, decree for divorce and custody of child, and at the November term, 1869, of our said court, this cause continued, and at the January term, 1870, of our said court, this cause was continued, and at the April term, 1870, this cause is dismissed by the plaintiff, at her costs, taxed at ——, which it is adjudged she pay."

*Held,* 1. That this was no valid decree of divorce, by reason of uncertainty. 2. That the record showed a mere memorandum from which a decree might be prepared. 3. That it showed a dismissal of the cause, which creates a presumption that prior inconsistent proceedings had been set aside.

MARRIAGE.—*Cohabitation.—Presumption.—Evidence.—*A marriage in good faith, where the husband erroneously supposes himself to be divorced from a previous living wife, is void and not capable of ratification; but if a valid divorce be afterwards had, and he and the last woman continue cohabitation in good faith, a presumption of a lawful marriage between them will arise.

SAME.—*Statute Construed.—*Section 1027, R. S. 1881, does not make valid a marriage in good faith contracted during a previous marriage and in ignorance of its existence.

From the Hamilton Circuit Court.

*W. Garver* and *R. Graham,* for appellant.

*R. R. Stephenson,* for appellee.

ELLIOTT, J.—Appellant and appellee are children of the same mother, and both claim to have inherited from her the land here the subject of controversy. The former claims all of the property, the latter one-half of it. The claim of the appellant is based upon the theory that the mother was lawfully married, after his father's death, to one William H. Clayton; that the appellee was the issue of that marriage, and that, as the mother inherited the land from her first husband, the appellant's father, and died during the second mar-

riage, the land thus inherited by her went to him at her death, under the provisions of our statute of descents. *Teter* v. *Clayton,* 71 Ind. 237. The case turns upon the question whether there was such a marriage between the mother, Hannah A. Teter, and William H. Clayton, as brings the case within the statute.

There was a marriage solemnized between Mrs. Teter and Clayton. Prior to the solemnization of this marriage, the latter had been married to Dora Clayton, who was living at the time of his second marriage; he believed that a decree of divorce had been rendered prior to that time in Muskingum county, Ohio; and the clear inference is that Mrs. Teter believed her marriage with him to be a lawful one, and that, acting on this belief, they cohabited as husband and wife. The belief of Clayton rested on the fact that proceedings for divorce had been instituted and an entry made on the record of the Ohio court decreeing a divorce, and the record introduced in evidence shows a foundation for this belief. The record of the foreign suit shows the filing of a proper petition, the issuing and service of process, the submission of the cause to the court for hearing, and that the following entries were duly made of record: "April term, 1869, to wit, on the 28th day of May, A. D. 1869, decree for divorce and custody of child; and at the November term, 1869, of our said court, this cause continued; and at the January term, 1870, of our said court, this cause was continued; and at the April term, 1870, this cause is dismissed by the plaintiff, at her costs, taxed at ——, which it is adjudged she pay." It was proved by the clerk of the Ohio court that "A decree of divorce and custody of the child was granted to the petitioner, Dora Clayton," and that no formal decree was entered because, as the witness said, " The rule of Judge Granger, of the common pleas court, who tried the case, was, that a decree should be entered when the costs were paid—the record of the decree, I mean—and, therefore, the record of the decree was never entered during my term of office."

A decree of a foreign court can only be proved by a duly

authenticated transcript of the record.   It is quite clear that the decree of a court can not be proved by parol, and we can not accept as evidence of the existence and terms of a decree the testimony of the clerk of the Ohio court.

The transcript introduced in evidence does not show a final decree of divorce, but, on the contrary, shows a dismissal of the suit without a decree.   Where the final judgment of a court is one dismissing the action, it must be presumed, in the absence of countervailing evidence, that it is one which the court was authorized to render.   If the record shows intermediate proceedings inconsistent with a judgment of dismissal, the presumption is that these were set aside and the judgment of dismissal duly and regularly rendered, except in cases where it affirmatively appears that the suit had been previously terminated by a judgment or order which the court had no power to annul.

The statement, " decree for divorce and custody of the child," does not appear to be the entry of a decree, but is a mere memorandum from which á decree might be prepared.   A memorandum of this character can not be regarded as in any sense a judgment.   Freeman Judg., sec. 52.

Still another objection exists against the position of appellant, that the evidence shows a valid judgment by the Ohio court, and that is, that, even if the entry be treated as a formal entry of judgment, it is lacking in that certainty which is requisite to all valid judgments.   Freeman Judg., sec. 50; *Robinson* v. *Tousey*, 6 Blackf. 256.   The evidence can not, therefore, be regarded as showing a divorce by the Muskingum county court of common pleas.

Four months after the marriage of Mrs. Teter and Clayton, the latter's former wife, Dora, did obtain a decree of divorce in one of the courts of this State.   This decree was obtained without the knowledge of Clayton on a notice by publication, and he married on the faith of the validity of the decree of the Ohio court.   The evidence shows that both he and Mrs. Teter were innocent of wrong, and their acts free

from all taint of immorality. It is contended that as there was no moral wrong the cohabitation after the removal of the bar by the domestic decree was a ratification of the previous marriage. By our statute a marriage is void where the husband has a living wife. R. S. 1881, sec. 1024. The rule of the common law is the same. *Smith* v. *Smith,* 5 Ohio St. 32; *Tefft* v. *Tefft,* 35 Ind. 44. The general rule, unquestionably, is that a void act can not be ratified. We can find no reason why this general principle should not apply to marriage, and the authorities are agreed in declaring that it does apply. Tyler Infancy & Cov. 833; *Thompson* v. *Thompson,* 114 Mass. 566; *Holabird* v. *Atlanta, etc., Ins. Co.,* 12 Am. L. Reg. 566.

There are, we know, cases holding that a marriage, invalid because of the insanity of one of the parties, may be ratified, after restoration to sanity, by cohabitation. There is a plain distinction between such cases and the one at our bar. The distinction is that cases of the one class are voidable merely, while the others are void. It is not difficult to perceive and state the difference between the two classes. It is clearly marked and well pointed out in *Koonce* v. *Wallace,* 7 Jones, 194, where the court said: "It may well be, that a second marriage, while the first is still subsisting, is void and incapable of confirmation, because it is so utterly denounced by the law as to subject the party marrying a second time, to capital punishment as a felon, but a mere want of age or understanding rests on a different footing entirely." Confusion has arisen upon kindred questions by confounding the terms void and voidable. Acts are sometimes declared to be void which are merely voidable, and a wrong statement is made although a right result is reached, for where the act is voidable ratification is possible, and the only mistake is in denominating the ratified act as void instead of voidable.

The evidence required the court to presume a marriage subsequent to the decree of divorce rendered in this State. The rule upon this subject is thus well stated in a very recent case:

VOL. 88.—32

"The presumption of marriage from a cohabitation apparently matrimonial, is one of the strongest presumptions known to the law. This is especially true in a case involving legitimacy. The law presumes morality, and not immorality; marriage, and not concubinage; legitimacy, and not bastardy. Where there is enough to create a foundation for the presumption of marriage, it can be repelled only by the most cogent and satisfactory evidence." *Hynes* v. *McDermott,* 91 N. Y. 451 (43 Am. R. 677). Many cases are cited in support of the doctrine declared, to which may be added *Blanchard* v. *Lambert,* 43 Iowa, 228; S. C., 22 Am. R. 245; *Physick's Estate,* 4 Am. Law Reg. N. S. 418; *Cargile* v. *Wood,* 63 Mo. 501; *Campbell* v. *Campbell,* L. R., 1 Sc. & D. 182. The foundation for the presumption of marriage having been laid by proof of living together and cohabitation as husband and wife, it was the duty of the court to give the appellant the benefit of the presumption.

Under our law little formality is required in the solemnization of marriages, and there is much more reason for giving effect to the presumption than in England and other countries where strict rules prevail. R. S. 1881, section 5330; 1 Bishop Mar. & Div. (6th ed.), section 279. Strict as are the rules respecting the celebration of marriages in England, there has never been any hesitation in giving effect to the presumption of which we are speaking.

The statute reading thus: "When either of the parties to a marriage, void because a former marriage exists undissolved, shall have contracted such void marriage in the reasonable belief that such disability did not exist, the issue of such marriage, begotten before the discovery of such disability by such innocent party, shall be deemed legitimate" (R. S. 1881, sec. 1027), does not validate such a marriage although it does legitimize the children born to the parties and begotten before the discovery of the bar. This point needs no elaboration, for it is expressly ruled in *Light* v. *Lane,* 41 Ind. 539.

Judgment reversed.