## HUFFMAN, BY NEXT FRIEND, *v.* HUFFMAN, GUARDIAN.

[No. 8,296. Filed November 7, 1912.]

1. MARRIAGE. — *Void Marriage.* — *Insane Persons.* — By statute (§§8360, 1059, 1060 Burns 1908, §§5325, 1024, 1025 R. S. 1881) a marriage is void where either party is insane or idiotic at the time of such marriage. p. 334.

2. MARRIAGE. — *Void Marriage.* — *Decree of Nullity.* — *Property Rights.*—The rule that all property questions between husband and wife are presumed to be adjudicated by a decree of divorce, does not apply to a decree of nullity rendered in a proceeding to have a marriage declared void. p. 335.

3. HUSBAND AND WIFE.—*Wife's Inchoate Interest in Husband's Real Estate.*—*Time of Vesting.*—*Judicial Sale.*—*Sale by Guardian.*—A guardian's *ex parte* sale of real estate is a judicial sale

within the meaning of §3052 Burns 1908, §2508 R. S. 1881, that vests title in the wife, as to her inchoate interest, on the judicial sale of her husband's real estate. p. 335.

4. HUSBAND AND WIFE.—*Wife's Inchoate Interest in Husband's Real Estate.—Void Marriage.—Judicial Sale.*—One who is not in law the wife of her nominal husband cannot take an interest in his real estate on a judicial sale thereof, since such right is dependent upon statute, and §3052 Burns 1908, §2508 R. S. 1881, gives such right only to one who bears the legal relation of wife to the owner of the real estate sold. pp. 335, 338.

5. GUARDIAN AND WARD.—*Ex Parte Orders.—Current Reports.—Modification.*—Matters pertaining to the settlement of a guardian with his ward remain *in ficri* until the final settlement account is approved and the guardian discharged, and, while *ex parte* orders, current reports and other matters passed on by the court are *prima facie* correct, they may be set aside, modified or corrected, if the requirements of justice so demand. p. 335.

6. MARRIAGE.—*Annulment.—Settlement of Guardianship.—Allowance to Wife.—Support.*—While the right of a wife to support by her husband depends primarily on the existence of the marriage relation, and a woman, not validly married, is not entitled to support from her alleged husband in a legal sense of the term, where a woman, whose marriage was void because of the insanity of the man at the time, was brought into the supposed marital relation without fault on her part and in good faith discharged the duties of a wife toward him, and allowances were made and ordered transferred to her private account out of funds coming into her hands as his guardian, to be used for her support, and she was permitted to retain half the rents from property at the time supposed to be owned by them by entireties, the court in passing on her final report as such guardian, filed after a decree had been rendered declaring the marriage null, did not abuse its discretion in allowing such credits, since under such circumstances a court may invoke equitable principles to avoid injustice. p. 336.

From Allen Circuit Court; *Richard K. Erwin,* Special Judge.

Exceptions by Alonzo A. Huffman, by his next friend Hubert C. Chenneour, to the report and final settlement of Annie J. Huffman, guardian of Alonzo A. Huffman. From an adverse judgment, the exceptor appeals. *Reversed.*

*Arthur W. Parry,* for appellant.
*Phil B. Colerick,* for appellee.

FELT, J.—This action was begun by the filing of exceptions to the report and final settlement of Annie J. Huffman, guardian of Alonzo A. Huffman, a person of unsound mind. The exceptions were filed by Hubert C. Chenneour, as next friend of Alonzo A. Huffman.

Appellant has separately assigned error based on each of the exceptions to the report of the guardian, and also that the court erred in overruling appellant's motion for a new trial.

The new trial was asked for on the ground that the decision of the court was contrary to law, that it was not sustained by sufficient evidence, and that the court erred in its rulings on each of its exceptions to the final report, numbered respectively one, two, three, four, five, six and seven.

The material facts of this case show that the guardian and her ward were married in 1876; that they lived together as husband and wife until the year 1904, when he was committed to an asylum for the insane; that in February, 1908, appellee was appointed guardian of his estate; that at the time of her appointment her said ward was the owner of a piece of real estate at Roanoke, Indiana, and they jointly owned another piece of real estate at the same place, and on her petition and the order of the court, these properties were sold, the former for $655, the latter for $200; that they also owned a piece of real estate in the city of Fort Wayne, Indiana, purchased in 1905 for $1,800, with her husband's money, while he was out of the asylum on a furlough, title to which was taken jointly in their names; that on April 21, 1910, appellee filed in the Allen Circuit Court a suit against said Alonzo A. Huffman, to have their marriage annulled, on the ground that at the time it was solemnized he was of unsound mind and incapable of entering into a marriage contract, which was unknown to her at the time; that such proceedings were had in said case by the service of summons and the appointment of a guardian ad litem; that on December 9, 1910, issues were formed, a trial had, and the court found that at

the time of their marriage said Alonzo A. Huffman was a person of unsound mind, and thereupon adjudged and decreed that the marriage of appellee and said Huffman was null and void, and further adjudged that the title to the real estate heretofore purchased in their names and situate in Fort Wayne, Indiana, be held by them as tenants in common; that on December 1, 1910, appellee filed her final report and settlement as guardian of her said ward, covering the period from her appointment in February, 1909, to the date of her report; that thereupon, on June 9, 1911, by permission of the court, appellant herein, presented a petition to the court asking to be appointed as next friend in said guardianship, and to be permitted to file exceptions to said final report, which petition was duly granted, and thereupon exceptions to said report were filed, in substance as follows:

(1) That appellee was not then and never had been the wife of her ward, and was not entitled to claim credit as shown in item ten of her report for the sum of $418.33 as her share of the proceeds of the sale of real estate so made as aforesaid and claimed by her as the wife of said Huffman; (2) that she was not entitled to the sum of $239.40 retained by her for support as the alleged wife of her said ward, the same being $11.40 per month for twenty-one months; (3) guardian claims credit for $34.34 paid out as taxes on real estate, title to which was in their names jointly, but the ward was liable for only one-half thereof; (4) of the claim for $70 as a credit for money paid out in making repairs on the real estate owned by herself and her ward as tenants in common, the ward should be charged with only one-half of the amount; (5) that on February 27, 1909, the Allen Circuit Court ordered the guardian to place the sum of $200 at interest for the benefit of her ward; that she should be charged with the sum of $12 interest, which was not shown in her report; (6) that the rental value of the Fort Wayne property held by joint title was $20 per month; that appellee occupied and

used the same for two years and five months; that she should charge herself with one-half of the rental value thereof, or the sum of $270.

A trial was duly had on said exceptions, and thereupon the court found for appellant in the sum of $100, on exception one, being item ten of said report, and also sustained exception three for $17.22 for taxes and exception four for $35, or one-half the amount paid out for repairs. The court rendered judgment thereon in the language following: "That the said ward is entitled to contribution from said Annie J. Huffman for $35 for repairs and $17.25 for taxes out of the amounts claimed by said guardian for taxes and repairs expended on the real estate owned by said ward and said guardian in the city of Fort Wayne, Indiana, as tenants in common, as claimed by items three and four of said report, respectively, and finds for said guardian and against said ward as to all other items claimed in said report, and the court finds for said next friend and against said guardian for $100 on exception No. 1, and for said guardian as to the balance of said exception."

On February 27, 1909, appellee filed her petition in the Allen Circuit Court praying for an allowance for maintenance of herself as wife of her ward, and the court allowed her the sum of $200, from the sale of real estate, and further ordered that $200, received from the sale of lot twenty-nine (being the lot at Roanoke, Indiana, owned jointly), be placed at interest until further order of the court; that on April 11, 1910, on petition of appellee, she was ordered by the Allen Circuit Court to transfer to her own account for her own use and for the improvement of her ward's property "the balance of all the money in her hands as guardian, to wit:" the sum of $101.01.

1. By statute a marriage in this State is void where either party is insane or idiotic at the time of such marriage. §8360 Burns 1908, §5325 R. S. 1881; §§1059, 1060 Burns 1908, §§1024, 1025 R. S. 1881.

In *Henneger* v. *Lomas* (1896), 145 Ind. 287, 298, 44 N. E. 462, it is said: "An action for divorce is brought for the purpose of dissolving a marriage, while a nullity suit

2. is brought for the purpose of having a void marriage declared void, or a voidable marriage judicially made void. In the divorce suit the marriage is recognized as valid and adjudged to be dissolved from the date of the decree, but in the nullity suit the marriage is not recognized, but is adjudged void, that is, that there was no marriage, and the rights of the parties are the same as if the marriage had never taken place. 1 Bishop, Mar. and Div. (1891 ed.) §§259, 271. It follows that the rule established in this State that all property questions between husband and wife are presumed to be adjudicated in the decree of divorce does not apply to a decree of nullity, and can, therefore, have no application to this case." See, also, 1 Bishop, Mar., Div. and Sep. §618; 2 Bishop, Mar., Div. and Sep. §1596; *Inhabitants of Winslow* v. *Inhabitants of Troy* (1902), 97 Me. 130, 53 Atl. 1008; 26 Cyc. 864.

A guardian's *ex parte* sale of real estate is a judicial

3. sale within the meaning of the statute that vests title in the wife as to her inchoate interest on the judicial sale of her husband's real estate. §3052 Burns 1908, §2508 R. S. 1881; *Sell* v. *Keiser* (1911), 49 Ind. App. 101, 96 N. E. 812.

Appellee's right to claim her one-third interest in funds derived from the sale of her ward's real estate depends on the statute. The statute gives such right only to the

4. one who bears the legal relation of wife to the owner of the real estate sold. Appellee was not in law the wife of her ward, and cannot take an interest in his real estate by virtue of a relation that did not exist.

It is the law of this State that matters pertaining to the settlement of a guardian with her ward remain *in*

5. *fieri* until the final settlement account is approved and the guardian discharged. *Ex parte* orders, cur-

rent reports and other matters passed on by the court are *prima facie* correct, but remain within the control of the court, and before final settlement and discharge of the guardian may be set aside, modified or corrected, if the requirements of justice demand such action. *State, ex rel.,* v. *Peterson* (1905), 36 Ind. App. 269, 273, 75 N. E. 602; *State, ex rel.,* v. *Wheeler* (1891), 127 Ind. 451, 454, 26 N. E. 552, 26 N. E. 1008.

6. A wife's right to support by her husband, or from his estate, depends primarily on the existence of the marriage relation. But the question presented in this case is on a different footing from what it would be if it arose on an application for support which was resisted on the ground that the marriage was void. In February, 1909, appellee was allowed the sum of $200 for support, and on April 11, 1910, she petitioned the court for permission to transfer to her private account for her own use the balance of funds in her hands as guardian, amounting to $101.01, and the order was granted. The suit to annul the marriage was not filed until April 21, 1910, and the decree annulling the marriage was not entered until December 9, 1910. She had received the money in pursuance of the order, or by the sanction of the court, before she filed her final report. The court had the power to open up the whole matter of allowances and orders previously made, if any sufficient reason in law or equity was shown to justify such action. The court, in considering the exceptions, refused to do so, and presumably for the reason that the demands of justice did not demand such action.

While appellee is not now in a position to claim a credit for support in the technical and legal sense of that term, we think it was not beyond the power of the court to allow her credit for the money so obtained and used by her as aforesaid, while she was nominally the wife of her ward and recognized the marital relation.

It has been held in other jurisdictions that on the annul-

ment of a marriage void *ab initio*, where the supposed wife was free from fault, the court may award her a sum in gross as compensation in the nature of damages, or decree an equitable division of property, though powerless to award alimony in the strict and technical meaning of that term. *Strode* v. *Strode* (1867), 3 Bush (Ky.) 227, 230, 96 Am. Dec. 211; *Werner* v. *Werner* (1898), 59 Kan. 399, 53 Pac. 127, 41 L. R. A. 349, 68 Am. St. 372 and notes; *Fuller* v. *Fuller* (1885), 33 Kan. 582, 587, 7 Pac. 241; *Barber* v. *Barber* (1887), 74 Iowa 301, 305, 37 N. W. 381. The fact that such claim may have been denominated support money, when the legal relation of husband and wife did not in fact exist, will not compel its disallowance now, if it has any basis in either law or equity to support it. A claim to an interest in real estate or funds derived from its sale, depending on the marital relation, cannot be sustained where the legal relation does not exist, but the money used by the supposed wife with the approval of the court, while recognizing the marital relation, does not depend on the same legal proposition, but has a basis in equity where the woman acted in good faith and is free from fault of which the law takes cognizance. The exception is in effect the same as a suit to recover back the money previously allowed by the court and used by appellee.

The amount does not evidence any extravagant expenditure, and in view of the court's orders we must presume the money was actually needed. While she was not legally the wife of her ward, she is not shown to have been in anyway culpable, and was in a position to merit some consideration at the hands of the court. Where a woman is brought into such relation without fault on her part, and innocently and in good faith discharges the duties of a wife, and in every way recognizes the marital relation, and it turns out that the marriage was in fact void from its inception, she is nevertheless on equitable and humanitarian principles

entitled to be supported by the man to whom she sustains such relation. We are not here called on to pass on the question as it would arise if an application was before us looking to future support, and was resisted on the ground of a void marriage, but we are asked to hold that support money actually allowed and used while the marriage relation was so recognized, shall be accounted for to the husband's estate by the supposed wife. In such a situation, the court is called on to administer justice, and may invoke equitable principles to avoid injustice.

On the facts of this case, we cannot say that the trial court, in allowing the credit denominated support money, abused its discretion, or that the demands of justice require the interference of this court to change the ruling on such exception. The court had a perfect right to consider the item of rent for the ward's half of the property occupied by the wife as a residence, and the item of interest, in the same light as the so-called support item, for by the previous order of the court the final balance of all funds in the guardian's hands was allowed her for personal use. The fact that the claim is not in the strict legal sense "support" money, because of the invalid marriage, does not affect the merits of the question, for the court will look through the mere form or wording of the claim to its substance. *Henneger* v. *Lomas, supra,* 300; *Bishop* v. *Redmond* (1882), 83 Ind. 157. When the marriage was annulled, the real estate supposed to be held by entireties was shown to be in fact held by appellee and her ward as tenants in common. But

4. her relation to the real estate to which her ward alone held title was not changed by the guardian's sale, and the fact that the marital relation was at the time of the sale recognized as existing cannot assist her in claiming title to the one-third thereof or the money derived from its sale. She was not legally his wife, and cannot therefore claim property depending on a valid marriage.

For the error in allowing appellee credit for the one-third

part of the money derived from the sale of her ward's real estate, the motion for a new trial should have been sustained.

The judgment is reversed, with instructions to the lower court to sustain the motion for a new trial and for further proceedings in accordance with this opinion.

NOTE.—Reported in 99 N.E. 769; See, also under (1) 26 Cyc. 843; (2) 26 Cyc. 919; (3) 14 Cyc. 927; (4) 14 Cyc. 889; (6) 26 Cyc. 918. As to the property of parties to a marriage after the latter is adjudged to be void, see 96 Am. St. 270. Division of property upon annulment of marriage, see 36 L. R. A. 844. Power, upon annulling a marriage to require man to provide for support of woman or child, see 5 L. R. A. (N. S.) 767. Alimony in suit to annul marriage, see 3 L. R. A. (N. S.) 192.